**ABB POWER T & D COMPANY, Appellant–Respondent,**

v.

**William KEMPKER, Respondent– Appellant;**

**Treasurer of the State of Missouri– Custodian of the Second Injury Fund, Respondent.**

Nos. WD 67465, WD 67480.

Missouri Court of Appeals, Western District.

Aug. 21, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 25, 2007.

Application for Transfer Denied Nov. 20, 2007.

Richard Lee Montgomery, Jr., Columbia, MO, for Appellant ABB Power.

Kristen Paulsmeyer, Asst. Attorney General, Columbia, MO for Respondent 2nd Injury Fund, Evan J. Beatty, Clayton, MO, for Respondent Kempker.

Before PAUL M. SPINDEN, P.J., PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, Jr., JJ.

JAMES M. SMART, JR., Judge.

In this consolidated appeal, ABB Power T & D Company appeals the Labor and Industrial Relations Commission's finding of no Second Injury Fund liability in its award of permanent, total disability benefits to William Kempker. Mr. Kempker appeals the denial of his claim for future medical expenses. The judgment is affirmed in part and reversed in part.

## Statement of Facts

William Kempker was employed by ABB from 1977 to May 2001. For the last fifteen to eighteen years of his employ-

ment there, he worked as a coil winder. On February 24, 2001, Mr. Kempker was running a high-voltage machine as part of his duties. As he was pulling on a copper strap, he felt a sharp pain in his back and a loss of control in his legs.

The next morning, ABB sent Mr. Kempker for medical treatment on his back. Mr. Kempker later was referred to Dr. Dennis Abernathie, an orthopedic surgeon. The doctor prescribed pain medication and ordered an epidural injection in the lower back, but these measures did not provide relief. Dr. Abernathie recommended surgery.

In October 2001, Dr. Abernathie performed a decompression laminectomy and fusion surgery on Mr. Kempker's back. Mr. Kempker initially improved after surgery, but his back pain later increased during physical therapy. Dr. Abernathie performed another surgery on Mr. Kempker six months later. Mr. Kempker's back pain got considerably worse after the second surgery. No further surgery was recommended. Following the surgery, Mr. Kempker continued to see his personal physician, Dr. Dudenhoeffer, who prescribed various medications, including medication for pain.

Unable to return to work due to the back injury, Mr. Kempker filed a workers' compensation claim for disability benefits in April 2002. He included a claim against Missouri's Second Injury Fund alleging permanent disability due to various prior injuries.

At the hearing in January 2006, the parties stipulated, *inter alia*, that on February 24, 2001, Mr. Kempker sustained an injury as a result of an accident while in the employment of ABB and that the accident arose out of and in the course of his employment. The parties agreed that ABB had notice of the injury and that the claim was timely filed. The parties also agreed as to the rate of compensation and the amount of temporary disability benefits and medical expenses that had been paid. The issues to be resolved were: (1) the nature and extent of the permanent disability, (2) the liability of the Second Injury Fund, and (3) ABB's liability for future medical expenses.

Mr. Kempker, who was forty-nine years old at the time of the hearing, testified about the circumstances surrounding the February 24, 2001, injury to his back. He discussed the treatments and surgeries he has undergone as a result of that injury and explained how it has rendered him unable to work or to perform his previous daily activities and hobbies. Mr. Kempker testified that he currently suffers from continuous pain in his back. He describes it as a burning, stabbing pain that radiates down into his leg and foot causing numbness and tingling. He had not experienced these symptoms prior to the February 2001 injury. He stated that the pain is unlike any previous back pain he has experienced. On a typical day, he testified, his pain level is a "six" on a scale of one-to-ten (with ten being the worst) and has been as high as a ten.

Since the February 2001 injury, Mr. Kempker cannot sit or stand for more than twenty minutes at a time and can walk only about one-eighth of a mile. The only relief he gets from his pain is from sitting in a recliner with his legs elevated, which he does about sixteen hours out of every day. He now requires the use of a power chair, a cane, or a walker. He is no longer able to hunt, cut wood, mow the grass, or perform household duties. None of these limitations existed before the February 2001 injury. Mr. Kempker testified that since the two surgeries, he has been unable to work and no doctor has released him to return to work. He stated that he is on permanent, long-term disability

through ABB and is receiving Social Security disability benefits.

Mr. Kempker discussed his prior injuries and medical treatments. He suffered a right knee injury in 1978, a carpal tunnel surgery and ganglion cyst removal in February 1999, and an on-the-job injury to his pelvis and lower back in March 2000 that resulted in hernia surgery. In the mid–1990's he sought treatment for strains to his lower back. Mr. Kempker insisted, however, that after each prior injury, he was able to return to his full duties on the same job at ABB relatively quickly with no restrictions. The March 2000 back injury was resolved before his last back injury in February 2001.

The claimant presented the deposition testimony of Dr. David Volarich. Dr. Volarich opined that Mr. Kempker is permanently and totally disabled as a result of all his injuries. Dr. Volarich concluded that the February 2001 accident had resulted in a permanent disability of sixty-five percent of the body attributable to the lumbar spine. He also assigned disability ratings to Mr. Kempker's other pre-existing disabilities.[1] In his written evaluation, Dr. Volarich listed numerous work restrictions based on all of Mr. Kempker's disabilities. On cross-examination, Dr. Volarich acknowledged that Mr. Kempker had returned to working full duty with no restrictions after all of his prior injuries and that it was only after his last injury that he was unable to return to work. Mr. Kempker told Dr. Volarich that he needed to rest in a recliner fifteen minutes out of every hour in order to relieve his back pain. Dr. Volarich said he considered the claimant "unemployable."

Vocational consultant Delores Gonzalez evaluated Mr. Kempker and also reviewed his medical records. She testified that he is not employable as the result of a combination of all his injuries. She concluded that his residual functional capacity is categorized "less than sedentary," which means there is no market for his services. She said he is unable to compete in the regular job market due to "the fact that he is unable to do any prolonged sitting, standing or walking" and because "it is necessary for him to rest by sitting at least fifteen to twenty minutes every hour in a recliner with his feet up ... to take the pressure off his low back." On cross-examination, Ms. Gonzalez testified that it is specifically the need to rest in a recliner every hour that causes him to be unemployable. When asked, considering his back problems alone, what type of work Mr. Kempker could do, Ms. Gonzalez said "he couldn't do any work."

The ALJ determined that Mr. Kempker is permanently and totally disabled solely as a result of the February 24, 2001, workplace injury to his back. The ALJ based this finding in part on Mr. Kempker's own testimony, which the ALJ found was supported by the medical records and the testimonies of Dr. Volarich and Ms. Gonza-

---

1. With regard to the March 2000 injury, Dr. Volarich rated ten percent disability of the body attributable to the hernia and twenty percent of the body attributable to the lumbar spine. He found a thirty-five percent permanent partial disability of the right wrist due to carpal tunnel syndrome and ganglion cyst excision and fifteen percent permanent partial disability of the right elbow all due to his February 1999 injury. Regarding pre–1999 injuries, Dr. Volarich assigned a rating of twenty percent of the right knee and five percent of the right hand due to a lacerated finger. He assigned no permanent disability to Mr. Kempker's back prior to 1999.

On the day of the hearing, the parties agreed to the following settlements for the prior permanent partial disabilities: fifteen percent of the right wrist, five percent of the right elbow, fifteen percent of the knee, and ten percent of the body as a whole related to the abdomen and low back.

lez. The ALJ stated that although Mr. Kempker had sustained prior injuries that resulted in permanent disability, "it was the sequelae of his February 24, 2001 back injury which caused him to be unemployable in the open labor market." The ALJ found that Mr. Kempker had failed to sustain his burden of proof as to Second Injury Fund liability for this reason. The ALJ denied Mr. Kempker's claim for future medical expenses.

Both ABB and Mr. Kempker appealed to the Labor and Industrial Relations Commission. The Commission unanimously affirmed and incorporated the ALJ's decision and award.

ABB and Mr. Kempker appeal that judgment.

## Standard of Review

■ This court reviews the Commission's award to determine whether it is "supported by competent and substantial evidence upon the whole record." Mo. CONST. art. V, sec. 18. We must affirm unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or there is insufficient evidence in the record to warrant the making of the award. Section 287.495.1.[2] Absent fraud, the Commission's findings of fact are conclusive and binding on appeal. *Id.*

■ When the Commission affirms and adopts the ALJ's award, we review the ALJ's findings as adopted by the Commission. *Gassen v. Lienbengood*, 134 S.W.3d 75, 79 (Mo.App.2004). We review the award objectively, *without* viewing the evidence and its inferences in the light most favorable to the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). To determine whether there is sufficient competent and substantial evidence to support the award, we examine the evidence in the context of the whole record. *Id.* at 222. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence. *Id.* at 223.

## ABB's Point on Appeal

ABB appeals the Commission's finding that Mr. Kempker's February 2001 back injury alone resulted in his total and permanent disability and that, therefore, the Second Injury Fund has no liability for benefits.

### Permanent, Total Disability

■ ABB seems to make a limited argument that the Commission erred in finding total and permanent disability. The test for permanent, total disability is the worker's ability to compete in the open labor market. *Sutton v. Vee Jay Cement Contracting Co.,* 37 S.W.3d 803, 811 (Mo. App.2000) (*overruled in part by Hampton,* 121 S.W.3d at 225).[3] The critical question is whether, in the ordinary course of business, any employer reasonably would be expected to hire the injured worker, given his present physical condition. *Id.; Gassen,* 134 S.W.3d at 80.

The weight of the evidence supports the notion that no employer reasonably would be expected to hire Mr. Kempker given his current physical condition. Dr. Volarich assigned disability ratings for each of Mr.

**2.** All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise noted.

**3.** Several of the cases that were overruled in part by *Hampton* are cited herein in support of other principles of law not affected by the *Hampton* ruling. For the sake of simplicity, no further acknowledgment of *Hampton's* effect on those cases is noted.

Kempker's injuries and opined that he was permanently and totally disabled as the result of all his injuries. He imposed numerous restrictions on Mr. Kempker based on his disabilities. The Commission listed those that specifically pertained to his lower back condition.[4] Ms. Gonzalez testified that Mr. Kempker is not employable as a result of his injuries. Mr. Kempker's testimony also supports the finding that he is totally and permanently disabled. The Commission found that Mr. Kempker's testimony is supported by the medical records and by the testimony of both experts. The Commission, as the finder of fact, is free to believe or disbelieve any evidence. *Bowers v. Hiland Dairy Co.*, 188 S.W.3d 79, 85 (Mo.App.2006). We defer to the Commission's findings as to weight and credibility of testimony and are bound by its factual determinations. *Higgins v. Quaker Oats Co.*, 183 S.W.3d 264, 271 (Mo. App.2005).

■ The only contrary evidence appears in a letter from Dr. Abernathie, in which he rated Mr. Kempker's disability "at 20% of the body as a whole" due to the fusion surgery and back injury. This does not constitute overwhelming evidence to rebut the Commission's findings. The Commission is free to choose between conflicting expert medical opinions, *Birdsong v. Waste Mgmt.*, 147 S.W.3d 132, 140 (Mo. App.2004), and its choice will not be disturbed on appeal. *Landman v. Ice Cream*

*Specialties, Inc.*, 107 S.W.3d 240, 248 (Mo. banc 2003).

■ ABB argues that Dr. Volarich's opinion in this regard is of little value because he "mistakenly" believed that Mr. Kempker underwent a three-level, rather than a two-level, fusion. ABB does not explain how this fact, even if true, necessarily invalidates Dr. Volarich's opinion regarding the extent of disability. ABB does not show that Dr. Volarich's determination of permanent, total disability was the result of this "misunderstanding." It is within the Commission's sole discretion to determine the credibility and weight to give expert opinions. *Birdsong*, 147 S.W.3d at 140. We find no abuse of discretion here.

The Commission's finding of total, permanent disability is not erroneous. It is supported by sufficient and competent evidence and is not against the weight of the evidence.

### Second Injury Fund Liability

■ ABB's main argument is that the Commission erred in finding that the Second Injury Fund had no liability. According to ABB, the Commission's finding that Mr. Kempker's total permanent disability is the result of the February 2001 injury alone is not supported by competent and substantial evidence and is against the weight of the evidence.

4. Those restrictions are:
1. He is advised to limit repetitive bending, twisting, lifting, pushing, pulling, carrying, and other similar tasks to an as needed basis;
2. He should not handle any weight greater than 10 pounds, and limit this task to an occasional basis assuming proper lifting techniques;
3. He should not handle weight over his head or away from his body, nor should he carry weight over long distances or uneven terrain;

4. He is advised to avoid remaining in a fixed position for any more than about 15–20 minutes at a time including both sitting and standing;
5. He should change positions frequently to maximize comfort and rest when needed;
6. He is advised to pursue an appropriate stretching, strengthening, and range of motion exercise program in addition to non-impact aerobic conditioning such as walking, biking, or swimming to tolerance daily.

ABB says a finding that the compensable injury resulted in permanent, total disability must be supported by medical or other expert evidence, citing *Moorehead v. Lismark Distributing Co.*, 884 S.W.2d 416, 419 (Mo.App.1994). Here, ABB argues, the only expert evidence came from Dr. Volarich and Ms. Gonzalez, and their testimonies show that it is the combination of *all* Mr. Kempker's injuries that cause him to be totally and permanently disabled. ABB says their testimonies show, at most, that it is Mr. Kempker's lower back condition alone that causes him to be totally and permanently disabled. Even if true, ABB says, the evidence is that he had a permanent partial disability related to his back prior to the February 2001 injury. ABB points out that Mr. Kempker was previously diagnosed with a herniated disc at the same L4–5 level that was surgically treated, that Dr. Volarich rated him at twenty percent disability as a result of the March 2000 injury, and that the parties settled for a permanent disability of ten percent related to that earlier injury.

"Section 287.220 creates the Second Injury Fund and sets forth when and in what amounts compensation shall be paid from the [F]und in '[a]ll cases of permanent disability where there has been previous disability.' " *Landman*, 107 S.W.3d at 248 (*quoting* Section 287.220.1). For the Fund to be liable for permanent, total disability benefits, the claimant must establish that: (1) he suffered from a permanent *partial* disability as a result of the *last* compensable injury, and (2) that disability has combined with a *prior* permanent *partial* disability to result in total permanent disability. Section 287.220.1; *Gassen*, 134 S.W.3d at 79.

 The Fund is liable for the permanent total disability only *after* the employer has paid the compensation due for the disability resulting from the later work-related injury. *Reiner v. Treas. of State of Mo.*, 837 S.W.2d 363, 366 (Mo.App. 1992); section 287.220.1 ("After the compensation liability of the employer for the last injury, considered alone, has been determined . . ., the degree or percentage of . . . disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined . . . ."). Thus, in deciding whether the Fund is liable, the first assessment is the degree of disability from *the last injury considered alone*. *Landman*, 107 S.W.3d at 248. Any prior partial disabilities are irrelevant until the employer's liability for the last injury is determined. *Id.* If the last injury in and of itself resulted in the employee's permanent, total disability, then the Fund has no liability, and the employer is responsible for the entire amount of compensation. *Id.*

On this basis, the Commission focused on the last compensable injury and found that it alone resulted in Mr. Kempker's permanent and total disability. The Commission explained: "It is . . . necessary that employee's last injury be closely evaluated and scrutinized to determine if it alone results in permanent total disability and not permanent partial disability, thereby alleviating any Second Injury Fund liability." The Commission concluded that "it is Mr. Kempker's injury to his back as the result of his accident of February 24, 2001, which has caused Mr. Kempker's permanent and total disability." The Commission acknowledged that the prior injuries resulted in permanent disability, but found that "it is the sequelae of his February 24, 2001, back injury which have caused him to be unemployable in the open labor market." It was unnecessary to examine the pre-existing disabilities, the Commission determined, because the Feb-

ruary 2001 back injury, alone, had caused permanent and total disability.

Our task is to determine, based on the whole record, whether this decision is supported by competent and substantial evidence. *See Hampton*, 121 S.W.3d at 222. This court may not set aside an administrative decision unless the decision is clearly contrary to the overwhelming weight of the evidence. *Landman*, 107 S.W.3d at 248. In making its award, the Commission cited, *inter alia*, Ms. Gonzalez's testimony that "it is Mr. Kempker's need to sit in his recliner every hour that causes him to be unemployable." The Commission noted that Dr. Volarich found Mr. Kempker's back to be asymptomatic prior to 1999 and assigned no permanent disability to his back prior to that. The Commission also found the restrictions Dr. Volarich imposed on Mr. Kempker significant, listing the ones that specifically pertained to his lower back condition.

The Commission appears to have based the award largely on Mr. Kempker's own testimony. The Commission found that Mr. Kempker "has sustained his burden of proof that he is permanently and totally disabled" and that "Mr. Kempker's testimony is supported by the medical records as well as the testimonies of Dr. Volarich and Ms. Gonzalez." Mr. Kempker testified in great detail about how the February 2001 back injury and the resulting surgeries have impacted his health, his ability to work, and his ability to perform ordinary, day-to-day activities. His testimony shows that it was the February 2001 back injury, along with the ensuing fusion surgeries, that resulted in his total and permanent disability. Mr. Kempker's testimony also indicated that none of his earlier injuries amounted to "a hindrance or obstacle" to his employment. *See* section 287.220.1 (preexisting permanent partial disability must be "of such seriousness as to constitute a hindrance or obstacle to employment" to be compensable). Mr. Kempker testified that after all his prior injuries he was able to return to his full duties on the same job at ABB with no restrictions and that he had missed only minimal amounts of work at the time of the injuries. With regard to the March 2000 back injury, he said he experienced some cramping and tightness, for which he was prescribed non-narcotic pain pills and ibuprofen. He continued to work full duty, and in a few weeks the symptoms went away. When asked about the condition of his back leading up to the February 2001 injury, he stated that it "was all right," that it did not affect his activities at home or at work, and that he never missed work because of it.

The Commission did not err in relying on Mr. Kempker's testimony. "The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and *extent* of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Reiner*, 837 S.W.2d at 367 (emphasis added); *see also Landers v. Chrysler Corp.*, 963 S.W.2d 275, 279 (Mo.App.1997). Mr. Kempker's testimony regarding the extent of his disability from the February 2001 injury was "within the realm of lay understanding," especially where, as found by the Commission, it is supported by the medical records and the experts' testimony. His testimony regarding his own inability to work also constituted competent and substantial evidence. *See Hampton*, 121 S.W.3d at 223–24 (claimant's credible testimony as to his work-related functioning can constitute competent and substantial evidence).

The Commission is the sole judge of witness credibility and is free to

disbelieve the testimony of any witness even if there is no contrary or impeaching evidence. *Anderson v. Emerson Elec. Co.,* 698 S.W.2d 574, 576 (Mo.App.1985). The Commission is "free to accept or reject any evidence, even medical evidence." *Gassen,* 134 S.W.3d at 81. Thus, the Commission was not required to accept Dr. Volarich's statement that Mr. Kempker's total and permanent disability was the result of all his injuries. Nor was the Commission required to accept Dr. Volarich's assessment of sixty-five percent disability attributable to the lower back injury of February 2001. The Commission is not bound by a medical expert's percentage estimates, because the "degree of disability is not solely a medical question." *Landers,* 963 S.W.2d at 284. Deciding the percentage or degree of disability to award a claimant "is a finding of fact within the unique province of the Commission." *Id.* The Commission also was free to rely on Dr. Volarich's statement that only Mr. Kempker's last injury rendered him unable to work, even if it appears to conflict with his prior testimony. *See Birdsong,* 147 S.W.3d at 140 (*quoting Maas v. Treas. of State of Mo.,* 964 S.W.2d 541, 545 (Mo.App.1998) (Commission may rely on a doctor's testimony even if it conflicts with his other opinions, because the variance in opinions presents a question of fact for the Commission)).

█ It is within the Commission's sole discretion to assess the weight to give expert opinions, *id.,* and its determinations in this regard will not be disturbed on appeal. *Landman,* 107 S.W.3d at 248. In this case, the Commission unanimously affirmed and adopted the findings and conclusions of the ALJ. Where the Commission's credibility determinations coincide with the ALJ's—particularly where both have determined the credibility of medical experts from a written record—the resulting consistency is a factor in favor of up-holding the Commission's award on appeal. *Roller v. Treas. of State of Mo.,* 935 S.W.2d 739, 746 (Mo.App.1996).

Our review of the whole record reveals that there is competent and substantial evidence to support the Commission's finding that Mr. Kempker is totally and permanently disabled as a result of the February 2001 injury alone and that the Fund, therefore, is not liable. Point denied.

### Mr. Kempker's Point on Appeal

█ Mr. Kempker appeals the Commission's denial of his claim for future medical care. He says the finding that he failed to sustain his burden of proof is against the weight of the evidence.

█ The Missouri Workers' Compensation Act includes an allowance for future medical treatment for an injured worker in section 287.140.1, which provides in part:

In addition to all other compensation . . ., the employee shall receive and the employer shall provide such medical . . . treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

In order to receive future medical benefits under the Act, a claimant is not required to present "conclusive evidence" that future medical treatment is needed. *Landers,* 963 S.W.2d at 283. Rather, he only needs to demonstrate a "reasonable probability" that future medical treatment is necessary by reason of his work-related injury. *Id.* "Probable" in this context means "founded on reason and experience which inclines the mind to believe but leaves room for doubt." *Rana v. Landstar TLC,* 46 S.W.3d 614, 622 (Mo.App.2001). The claimant is not required to present evidence of the specific medical care that

will be needed, *Landers,* 963 S.W.2d at 283, but he is required to establish through competent medical evidence that the care requested "flows from the accident." *Bowers,* 188 S.W.3d at 85. An employer is required to compensate for future medical care only if "the evidence establishes a reasonable probability that additional medical treatment is needed and, to a reasonable degree of medical certainty, that the need arose from the work injury." *Id.*

The Commission concluded that Mr. Kempker did not sustain his burden of proof, because he did not make it clear *why* he was taking each of the medications he listed. The Commission also noted that no physician described or explained the medication that he should be taking to cure or relieve the effects of the February 2001 injury.

We disagree. Mr. Kempker testified that since his back surgeries, he has continued under the care of Dr. Dudenhoeffer, who regulates his pain medication and refers him for CAT scans, specialists, etc. Dr. Dudenhoeffer has prescribed seven different medications for him in the last four years. Four of those medications are needed to treat his low back pain from the February 2001 work injury and surgeries. The other medications counteract the side effects of the pain medication. He also takes a prescription to help him sleep, again because of the pain, and he takes over-the-counter pain medication. Mr. Kempker's testimony indicates that his need for all these medications arose from the February 2001 back injury and the resulting surgeries. The evidence indicates that he was not taking these medications on an on-going basis prior to that injury.

Medical evidence regarding the need for future medical care came from Dr. Volarich. Dr. Volarich testified that as a result of the injury to his back and the related surgeries, Mr. Kempker suffers from ongoing discogenic pain syndrome and pseudoarthrosis. When asked about whether the pseudoarthrosis will worsen "in terms of affecting Mr. Kempker's further functional ability and/or need for treatment," Dr. Volarich responded that a myelogram CT would be the first step in making that determination. Dr. Volarich did not recommend any additional surgery. In his written evaluation, Dr. Volarich opined:

> In order to maintain his current state, [Mr. Kempker] *will require* ongoing care for his pain syndrome using modalities including but not limited to narcotics and non-narcotic medications (NSAIB) muscle relaxants, physical therapy and similar treatments as directed by the currents of standard of medical practice for symptomatic relief of his complaints. (Emphasis added.)

Dr. Volarich also noted in his report that "should his lumbar radicular syndrome worsen, myelogram/CT scan will be necessary" and that if the orthopedic fixating hardware in his low back becomes infected, loosens, or fails, it will need to be removed or replaced.

Mr. Kempker's testimony, along with the medical evidence from Dr. Volarich, establishes that his need for medication and other medical care "flows from" his last back injury, and that this need will continue in the future. This is particularly true in light of the Commission's finding that it was the last injury *alone* that rendered Mr. Kempker totally and permanently disabled. The Commission's determination that he did not sustain his burden of proving that the need for future medical care arose from that last injury is inconsistent with that finding.

## Conclusion

For the foregoing reasons, the judgment is affirmed as to the finding that Mr.

Kempker is totally and permanently disabled, and that there is no Second Injury Fund liability. We reverse the portion of the award denying future medical benefits for pain control and remand the matter to the Commission for entry of a ruling on that issue consistent with this opinion.

SPINDEN and BRECKENRIDGE, JJ., concur.