**TREASURER OF THE STATE OF MISSOURI–CUSTODIAN OF THE SECOND INJURY FUND, Appellant,**

v.

**Phillip COOK, Respondent.**

**No. WD 72019.**

Missouri Court of Appeals, Western District.

Oct. 26, 2010.

Andrew J. Dickson, Kansas City, MO, for Appellant.

Thomas Stein, Kansas City, MO, for Respondent.

Before LISA WHITE HARDWICK, C.J., JAMES EDWARD WELSH, J., and CHARLES E. ATWELL, Sp. J.

JAMES EDWARD WELSH, Judge.

The Missouri State Treasurer as Custodian of the Second Injury Fund appeals the Labor and Industrial Relations Commission's decision that the Second Injury Fund is liable to Phillip Cook for permanent total disability benefits. The Second Injury Fund argues that the Commission erred in awarding Cook benefits because his claim against it was time barred, and therefore, the Commission lacked the authority to consider the claim. The Second Injury Fund also argues that there was not sufficient competent evidence to support the Commission's award. We affirm.

On November 24, 2003, Cook injured his right shoulder in the course and scope of his employment as a toolmaker with Saint–Gobain Calmar. Cook received medical treatment for this injury until his physician released him from care on October 7, 2005. Saint–Gobain Calmar accepted liability for Cook's injury and paid him $12,649.50 for medical expenses and $5,953.92 in temporary disability benefits.

In March 2006, Saint–Gobain Calmar agreed to pay Cook a lump sum of $12,076.30, based upon the approximate disability of fifteen percent to his right arm. Saint–Gobain Calmar and Cook memorialized their agreement on the Division's "Stipulation for Compromise Settlement" form, which they filed with the Division. An administrative law judge approved the stipulation on March 24, 2006.

On April 13, 2006, Cook filed a claim for compensation against only the Second Injury Fund.[1] Cook alleged that his preexisting disabilities combined with his November 24, 2003 injury rendered him permanently and totally disabled. The Second Injury Fund filed an answer asserting that Cook's claim was time barred under section 287.430, RSMo 2000.

An administrative law judge (ALJ) held a hearing on this matter in February 2009. The ALJ found that Cook had not filed a claim for compensation against his employer; hence, under section 287.430, he had two years after his November 24, 2003 injury to file his claim for compensation against the Second Injury Fund. Because Cook did not file his claim for compensation against the Second Injury Fund until April 13, 2006, the ALJ concluded that Cook's claim was time barred and denied it.

Cook filed an application for review with the Commission. The Commission reversed the ALJ's decision and found that Cook's claim against the Second Injury Fund was timely. In reaching this conclusion, the Commission relied upon *Grubbs v. Treasurer of Missouri as Custodian of the Second Injury Fund,* 298 S.W.3d 907,

---

1. Cook filed amended claims in November 2006 and February 2008.

911 (Mo.App.2009), in which the Eastern District of this court held that a stipulation for compromise settlement constitutes a claim against an employer under section 287.430. Because Cook filed his claim against the Second Injury Fund within one year after filing the stipulation for compromise settlement, the Commission determined that his claim was not time barred. The Commission further found that the combination of Cook's preexisting disabilities and his primary work injury rendered him unable to compete in the open labor market. Therefore, the Commission ordered the Second Injury Fund to pay Cook permanent total disability benefits. The Second Injury Fund appeals.

■ On appeal from the Commission's award in a workers' compensation case, we may modify, reverse, remand for rehearing, or set aside the Commission's award only if we conclude that the Commission acted in excess of its powers, that the award was procured by fraud, that the facts found by the Commission do not support the award, or that there was not sufficient competent evidence in the record to warrant making the award. § 287.495.1, RSMo 2000. In the absence of fraud, the Commission's findings of fact are conclusive and binding. *Id.* We are not bound by the Commission's interpretation and application of the law, however, and we afford no deference to the Commission's interpretation of the law. *Pierson v. Treasurer of State*, 126 S.W.3d 386, 387 (Mo. banc 2004).

■ In its first two points on appeal, the Second Injury Fund contends that Cook's claim for compensation against it was time barred, and therefore, the Commission lacked the authority to consider the merits of his claim. Section 287.430 says that "[a] claim against the second injury fund shall be filed within two years after the date of the injury or within one year after a claim is filed against an employer or insurer pursuant to this chapter, whichever is later." Cook filed his claim against the Second Injury Fund over two years after his injury but within one year after he filed the stipulation for compromise settlement with his employer. The issue, then, is whether the stipulation for compromise settlement constituted a claim filed against Cook's employer pursuant to Chapter 287, the Workers' Compensation Law.

As we noted earlier, the Eastern District of this court recently addressed this issue in *Grubbs*, 298 S.W.3d at 911. In *Grubbs*, the Second Injury Fund had contended, as it does here, that the word "claim" in 287.430 refers only to a claim filed on the Division's "Form WC–21 Claim for Compensation." *Id.* at 910–11.[2] The court in *Grubbs* rejected the Second Injury Fund's contention after considering the plain and ordinary meaning of the words used in section 287.430. *Id.* at 911. The court cited the dictionary definition of the word "claim," which is " '[t]he aggregate of operative facts giving rise to a right enforceable by a court.' " *Id.* (citing BLACK'S LAW DICTIONARY 240 (7th ed.1999)). This definition does not restrict a "claim" to a filed lawsuit but, rather, says that the facts that support a potential lawsuit constitute a "claim," presumably regardless of whether a formal lawsuit is filed. Thus,

---

**2.** The Second Injury Fund noted in *Grubbs,* as it does here, that the legislature directed the Division and Commission in section 287.630, RSMo 2000, to prepare and furnish to the public all forms, including claim forms, that are necessary for the efficient administration of the Workers' Compensation Law. *Grubbs,* 298 S.W.3d at 910. Because of this, the Second Injury Fund argued that the legislature intended that all references to a "claim" in section 287.430 mean only a claim filed on a Form WC–21 Claim for Compensation. *Id.* at 911.

the court in *Grubbs* concluded that a dispute settled out-of-court in a stipulation for compromise settlement is a "claim" within the plain and ordinary meaning of section 287.430. *Id.*

The court in *Grubbs* further found that interpreting a "claim" to include disputes resolved informally through settlement agreements is consistent with the use of the word "claim" in section 287.390, RSMo, the statute governing compromise agreements. *Id.* Because section 287.390 provides that ALJs can approve only settlements between "parties to claims," the court reasoned that, if a "claim" referred only to a Form WC–21 Claim for Compensation, then ALJs could approve only those settlements entered into between parties to a dispute for which a Form WC–21 had been filed. *Id.* As "settlements are encouraged under the law," the court "decline[d] to find that a party must make a formal filing of a Form WC–21 before a settlement may be approved by an ALJ." *Id.* Thus, the court in *Grubbs* held that a claim against the Second Injury Fund is timely if it is filed in the Division within one year of the stipulation for compromise settlement. *Id.*

The Second Injury Fund urges us not to rely upon *Grubbs* because it contends that one of the cases that *Grubbs* cited, *O'Malley v. Mack International Motor Truck Corp.*, 225 Mo.App. 1, 31 S.W.2d 554 (1930), is not good law. In determining that, under the plain and ordinary meaning of the language of section 287.430, a settlement agreement constitutes a "claim," *Grubbs* noted that the court in *O'Malley* had equated a settlement agreement with a claim for compensation. *Grubbs*, 298 S.W.3d at 911. In *O'Malley*, an employee injured in a work-related accident entered into a settlement agreement for compensation with his employer before he discovered other injuries from the same accident. 31 S.W.2d at 555. The injured employee subsequently filed a claim for compensation for those other injuries against his employer. *Id.* *O'Malley* held that the injured employee's filing of the settlement agreement equated to the filing of a claim for compensation that tolled the statute of limitations on the employee's subsequent claim against his employer. 31 S.W.2d at 557. After *O'Malley*, the legislature added a tolling provision to section 287.430, which says that "[t]he filing of any form, report, receipt, or agreement, other than a claim for compensation, shall not toll the running of the periods of limitation provided in this section."[3] Because *O'Malley*'s statement equating the filing of a settlement agreement to the filing of a claim for compensation for purposes of tolling the statute of limitations on an injured employee's claim against an employer is no longer valid, the Second Injury Fund urges us not to follow *Grubbs*.

*Grubbs*'s citation of this statement from *O'Malley* was merely dictum, however. It was not essential to the court's interpretation of the language prescribing the statute of limitations for Second Injury Fund liability. *Grubbs* resolved the issue of what constitutes a "claim" in this context by ascertaining the plain and ordinary meaning of the word "claim" from the dictionary. 298 S.W.3d at 911. The dictionary definition of "claim" that *Grubbs* cited is broad enough to encompass both lawsuits and disputes settled informally. *Grubbs*'s noting that *O'Malley* and another case, *Williams By and Through Wilford v. Barnes Hospital*, 736 S.W.2d 33, 38 (Mo. banc 1987), had similarly interpreted the

---

**3.** The tolling provision was added in 1947 to section 3727, RSMo 1939, the predecessor to section 287.430.

word "claim" in other contexts was unnecessary to *Grubbs's* holding and was, therefore, dictum.

The Second Injury Fund also argues that, because the legislature said in section 287.430's tolling provision that only the filing of a "claim for compensation" and not the filing of an agreement is sufficient to toll the statute of limitations, the legislature intended that all references to a "claim" in the statute mean only a claim for compensation. We disagree. If the legislature had intended that only the filing of a claim for compensation trigger the one-year statute of limitations for Second Injury Fund liability, it would have referred to a "claim for compensation" as it did in the statute's tolling provision. *See Christensen v. Am. Food & Vending Servs., Inc.*, 191 S.W.3d 88, 92 (Mo.App. 2006) (stating that, "[w]hen different terms are used in different subsections of a statute, we presume the legislature intended the terms to have different meaning and effect"). Instead, the legislature said that the one-year statute of limitations for Second Injury Fund liability was triggered "after a claim is filed against an employer or insurer pursuant to this chapter." § 287.430. A claim that is filed "pursuant to this chapter" is broad enough to include a compromise settlement filed pursuant to section 287.390.

We agree with the Eastern District's interpretation of section 287.430 in *Grubbs*. Cook had an enforceable right to compensation against his employer that he asserted in the stipulation for compromise settlement. The stipulation for compromise settlement was filed in the Division and approved by an ALJ in March 2006. The stipulation for compromise settlement constituted a claim filed against Cook's employer within the plain and ordinary meaning of section 287.430. Cook's April 13, 2006 claim for compensation against

the Second Injury Fund was filed within one year of the stipulation for compromise settlement and was, therefore, timely. Because Cook's claim for compensation against the Second Injury Fund was timely, the Commission had the authority to consider it. We deny the Second Injury Fund's first and second points.

■ In its third point, the Second Injury Fund argues that there was not sufficient competent evidence to support the Commission's award because the undisputed evidence shows that Cook was not permanently and totally disabled following the November 24, 2003 work injury. To determine whether there is sufficient competent and substantial evidence to support the Commission's award, we examine the evidence in the context of the whole record. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). The Commission is free to believe or disbelieve any evidence, and we defer to the Commission's credibility determinations and to the weight it accords testimony and evidence. *Clark v. Harts Auto Repair*, 274 S.W.3d 612, 617 (Mo.App.2009).

■ "The Second Injury Fund compensates injured workers who are permanently and totally disabled by a combination of past disabilities and a primary work injury." *Concepcion v. Lear Corp.*, 173 S.W.3d 368, 371 (Mo.App.2005). The test for permanent total disability is whether the worker is able to compete in the open labor market. *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 48 (Mo.App. 2007). "The critical question is whether, in the ordinary course of business, any employer reasonably would be expected to hire the injured worker, given his present physical condition." *Id.*

Competent and substantial evidence supports the Commission's determination that the combination of Cook's preexisting disabilities and his primary work injury

rendered him unable to compete in the open labor market. James A. Stuckemeyer, M.D., a board-certified orthopedic surgeon, independently evaluated Cook and opined that (1) Cook's numerous preexisting cardiovascular conditions constituted a twenty-five percent permanent partial disability of the body as a whole; (2) Cook's preexisting back condition constituted a twenty-five percent permanent partial disability to the lumbosacral spine; (3) Cook's preexisting foot problems from plantar fasciitis constituted a fifteen percent permanent partial disability at the level of the ankle bilaterally; (4) Cook's preexisting left shoulder condition constituted a fifteen percent permanent partial disability at the level of the shoulder; (5) Cook's preexisting right shoulder condition constituted a fifteen percent permanent partial disability at the level of the shoulder; and (6) Cook's primary work injury to his right shoulder constituted a twenty percent permanent partial disability at the level of his right shoulder.

Based upon Cook's preexisting disabilities and primary work injury, Stuckemeyer opined that he would place Cook on several permanent physical restrictions. These restrictions included: no prolonged standing or walking, no lifting greater than ten to fifteen pounds on an occasional basis, no repetitive traversing of steps, no ladder climbing, no overhead use of the right arm, and no pushing or pulling with the right arm greater than ten to fifteen pounds on an occasional basis.

According to Mary Titterington, a vocational rehabilitation consultant who evaluated Cook, Stuckemeyer's restrictions would preclude Cook from returning to his former occupation, which consistently required standing, walking, bending, pushing, pulling, reaching, and lifting. She determined that Stuckemeyer's restrictions limited Cook to sedentary work. Howev-er, Cook had only an eighth-grade education, limited math and academic skills, and no GED, which Titterington believed would disqualify him for many sedentary jobs. Moreover, Titterington did not believe that Cook, who was sixty-four, was a good candidate for vocational retraining due to his age, physical restrictions, lack of a high school diploma, and limited educational skills. Titterington opined that Cook was not employable in the open labor market because there was no expectation that any employer would hire him.

The Second Injury Fund did not present testimony or evidence from any medical or vocational experts to contradict Stuckemeyer's or Titterington's opinions. On appeal, the Second Injury Fund argues that Stuckemeyer's and Titterington's opinions were not sufficient to support the determination that Cook was permanently and totally disabled because there was evidence that Cook returned to work for a while following his treatment for his primary work injury. Cook testified, however, that, when he returned to work, he found that, physically, "it was just a real struggle to come in every day and do my job." According to Cook, he has difficulty pushing, pulling, lifting, and reaching. He also has difficulty with prolonged standing, walking, and sitting.

The Commission expressly stated that it found Cook's testimony credible. The Commission also expressly stated that it found Stuckemeyer's and Titterington's opinions credible. We defer to the Commission's credibility determinations. *Clark*, 274 S.W.3d at 617.

Cook's testimony, along with Stuckemeyer's and Titterington's opinions, constituted sufficient competent and substantial evidence to support the Commission's determination that the combination of Cook's preexisting disabilities and primary work injury rendered him permanently and to-

tally disabled. We deny the Second Injury Fund's third point.

We, therefore, affirm the Commission's award.

All concur.