

# In the
# Missouri Court of Appeals
# Western District

RONALD LAWRENCE,

        **Appellant,**

v.

**TREASURER OF THE STATE OF
MISSOURI - CUSTODIAN OF THE 2ND
INJURY FUND,**

        **Respondent.**

**WD77998**

**OPINION FILED:**

**July 28, 2015**

## LABOR AND INDUSTRIAL RELATIONS COMMISSION

**Before Special Division:**
**James Edward Welsh, P.J., Anthony Rex Gabbert, J., and Robert M. Clayton, III, Sp. J.**

Ronald Lawrence appeals the Labor and Industrial Relations Commission's decision denying him workers' compensation benefits for a permanent total disability from the Second Injury Fund. We reverse the judgment and remand to the Commission.

## Background

Lawrence began working for Southwestern Bell Telephone, LP ("Employer") in November 1973 as a lineman. In 1984, he began working as a cable-splicer and continued in that position for twenty-two years. Lawrence's job involved a lot of bending, twisting, and stooping, and his job duties required him to carry up to 150 pounds of gear.

On May 11, 2005, Lawrence injured his lower back at work when he slipped and fell while helping to place a cable on a rack. Following the injury, Lawrence experienced a sudden increase in back pain and pain shooting into his legs. He sought treatment from Dr. William Miller, who treated the injury with prescription pain medication and physical therapy.

Lawrence filed a claim for workers' compensation benefits against both the Employer and the Second Injury Fund ("the Fund")[1] for the May 11, 2005 work injury (the "primary injury"). In his claim against the Fund, Lawrence alleged the following preexisting disabilities: back surgery, right rotator cuff surgery, left rotator cuff surgery, heart attack, and right knee surgery.

Lawrence and his Employer eventually entered into a settlement agreement under which Employer agreed to pay Lawrence $21,243 for a permanent partial disability representing approximately 15% of the body as a whole due to the primary injury. On April 10, 2013, an Administrative Law Judge (ALJ) approved that settlement agreement.

In August 2013, the same ALJ held a hearing on Lawrence's claim against the Second Injury Fund. The issues to be resolved were: (1) whether Lawrence sustained an injury by accident arising out of and in the course of his employment; and (2) the nature and extent of disability, whether permanent partial disability or permanent total disability, and the Second Injury's Fund's liability therefor. The latter issue is the subject of this appeal.

At the hearing, Lawrence testified about the primary work injury and his preexisting disabilities, and he introduced his medical records into evidence. Lawrence also presented the deposition and report of Dr. P. Brent Koprivica, an occupational medicine specialist, and the

---

[1]The Missouri General Assembly enacted the statutes creating the Second Injury Fund in 1943 in order to encourage the employment of disabled individuals by limiting the employer's liability, in the event of a work-related injury, to only that part of the disability that is attributable to the work injury. *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013) (citing 1943 Mo. Laws 1068).

2

deposition and report of Michael Dreiling, a specialist in vocational rehabilitation. Neither the Employer nor the Fund had Lawrence evaluated or presented any expert testimony.

Lawrence testified about his limitations on the job prior to and after the 2005 injury. He stated that, as a result of his 2005 injury, he has had a marked increase in back pain and has had to self-limit his activities. He stated, for example, that he must lie down during the day at times to relieve his back symptoms. Lawrence further testified that, based upon all of his various physical conditions, he is unable to work.

Lawrence's medical records showed that Dr. Miller had diagnosed him with severe low back pain and acute radiculopathy. Following an MRI, Dr. Miller further diagnosed Lawrence with degenerative disc disease and lumbar disc disease with disc bulging. Dr. Miller indicated that Lawrence's squatting at work caused further bulging of the disc that led to his neurologic symptoms, and he restricted Lawrence from working under those conditions.

Employer placed Lawrence on light duty working in the office. This required him to sit for long periods of time. Lawrence continued to complain of severe pain in his low back and right leg. On June 9, 2005, Dr. Miller restricted Lawrence from bending or lifting over ten pounds. Three weeks later, Dr. Miller made those restrictions, and restrictions on continually sitting, climbing poles, or doing heavy lifting, permanent. On September 27, 2005, when Lawrence was still having back pain, Dr. Miller recommended that he not return to work. Lawrence retired from his job two days later and has not worked since September 29, 2005.

At the hearing, Lawrence also presented evidence of his various preexisting disabilities. That evidence showed that he first injured his back at work in 1978 and underwent back surgery in 1983. He was off work for nine months following surgery but then returned full time to his job as a lineman. His back injury slowed him down, but he was not placed under any doctor's

3

restrictions at that time. He continued to periodically seek treatment for his on-going back pain. His last doctor visit for back pain was in April 2005, a month before the primary work injury.

Lawrence had been prescribed Xanax to treat anxiety and hyperactivity for approximately twenty-five years at the time of the 2005 work injury. He attributed those conditions to stress from his job. He mentioned that the Xanax also gave him some relief from his back pain.

In January 1995, Lawrence had surgery on his right shoulder to repair a rotator cuff tear. Two years later, he underwent rotator cuff repair surgery on his left shoulder. As to both surgeries, he was released without restrictions and eventually resumed his full-time work duties.

On October 4, 2000, Lawrence had surgery on his right knee. Also in October 2000, he was diagnosed with mild cubital tunnel syndrome in the right upper extremity, which caused numbness in his hand. Lawrence's other maladies included Raynaud's Phenomenon, which caused circulation problems in his hands and feet in cold temperatures, a "silent heart attack" in 2000, and chronic asthma since childhood.

Dr. Koprivica evaluated Lawrence in July 2006. He testified, via deposition, that the May 11, 2005 injury represented a new injury that aggravated Lawrence's preexisting low back condition and concluded that Lawrence had suffered a 15% permanent partial disability as a result of this injury. Dr. Koprivica found that Lawrence suffered preexisting permanent partial disability to his lower back as well as a permanent partial disability as to both the right upper extremity and the left upper extremity at the shoulder level.[2] He concluded that Lawrence's preexisting permanent partial disabilities combined with the additional disability attributable to

_____

[2]Dr. Koprivica did not find that Lawrence's heart condition, right knee, and cubital tunnel syndrome were hindrances or obstacles to employment. Lawrence had not informed the doctor of his diagnosis with Raynaud's Phenomenon or of problems with numbness in his hands and feet.

4

the 2005 injury and created a "synergistic effect" that resulted in an enhancement over and above the simple sum of the separate disabilities.

Dr. Koprivica's report does not indicate that Lawrence informed him of his need to lie down during the day to alleviate his back pain. Dr. Koprivica testified in his deposition, however, that if Lawrence had such a need subsequent to the May 2005 injury, then that would be "totally disabling" and would be a result of the "overall lumbar impairment." Dr. Koprivica did not conclude that Lawrence was permanently and totally disabled but stated, rather, that if a vocational expert found Lawrence to be permanently and totally disabled, he would defer to that expert. However, Dr. Koprivica further stated that, if it were the case that Lawrence had to lie down during the day to alleviate his back pain, then it was his opinion that the primary work injury was not totally disabling in isolation but that the resulting total disability would be from the "synergism of combining those disabilities."

Vocational rehabilitation specialist Michael Dreiling assessed Lawrence in November 2006. He testified, via deposition, that Lawrence was "unemployable in the open labor market" due to his 2005 injury in combination with all his preexisting conditions, including his right knee and hands. Dreiling concluded that Lawrence was totally and permanently disabled.

The ALJ found that Lawrence had a preexisting permanent partial disability when he sustained the primary injury on May 11, 2005. The ALJ concluded that the 2005 injury combined with his preexisting disability, resulting in a permanent *partial* disability of 12.5% of the body as a whole and awarded him permanent *partial* disability benefits from the Fund.

Lawrence appealed, alleging that the ALJ erred in finding that he is not permanently and *totally* disabled. The Labor and Industrial Relations Commission affirmed and adopted the

5

ALJ's award but made modifications.[3]  The Commission found, contrary to the ALJ's opinion, that "none of the witnesses . . . lack[s] credibility" and "that the evidence suggests that employee is permanently and totally disabled."  The Commission concluded, however, that Lawrence failed to meet his burden of proving that the Fund is liable for permanent *total* disability benefits because the record was insufficient to resolve "several important fact questions."  Those "fact questions" pertained to:  (1) the lack of "an opinion from a medical expert that employee has a need to lie down during the day, or that such a need is referable to a combination of the primary injury and his preexisting conditions," (2) whether there "may be a psychiatric component" to Lawrence's back pain and how his "preexisting psychiatric diagnoses may factor into his permanent total disability," and (3) the incongruence between Dreiling's and Dr. Koprivica's assessments of Lawrence's preexisting disabilities to his right knee and right upper extremity.

### Discussion

Lawrence argues on appeal that the Commission erred in concluding that the Second Injury Fund is not liable for his permanent and total disability due to his failure to provide expert testimony on the issues of his need to lie down during the day and the possibility that there is a "psychiatric component" to his low back pain.  He contends that the Commission "ignored" competent, substantial evidence, consisting of his own uncontradicted testimony, his medical expert's testimony, and his medical records, which showed that his permanent total disability is a result of the combination of the primary injury and his preexisting disabilities.

#### *Standard of Review and Statutory Framework*

Our review of the Commission's decision is governed by article V, section 18, of the Missouri Constitution and section 287.495, RSMo 2000.  Article V, section 18, provides for

---

[3] One Commissioner dissented in a separate opinion.

judicial review of the Commission's award to determine whether the decision is authorized by law and whether it is "supported by competent and substantial evidence upon the whole record."[4] Under section 287.495, we must affirm unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award. We defer to the Commission's credibility determinations and to the weight it accords the evidence, but we review issues of law, including the Commission's interpretation and application of the law, *de novo*. *See Treasurer of State-Custodian of Second Injury Fund v. Cook*, 323 S.W.3d 105, 108, 110 (Mo. App. 2010).

In reviewing a workers' compensation award, we examine the record as a whole to determine if the award is supported by sufficient competent and substantial evidence, or whether the award is contrary to the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222-23 (Mo. banc 2003). As instructed by the Court in *Hampton*, we are to review such an award ***objectively***; we are ***not*** to view the evidence and its inferences in the light most favorable to the award (as prior cases had stated).[5] *Id*. at 223. Thus, pursuant to *Hampton*, in order to determine whether there is sufficient competent and substantial evidence to support the award, we examine the evidence in the context of the whole record. *Id*.

In addition, because Lawrence's primary injury pre-dated the 2005 amendments to the Workers' Compensation Act,[6] this case is governed by the earlier version of the Act, which

---

[4]We review the findings of the Commission, not the ALJ. *Arciga v. AT & T,* 366 S.W.3d 91, 94 (Mo. App. 2012). When the Commission affirms and adopts the ALJ's award, we review the ALJ's findings to the extent that they are adopted by the Commission. *Id*.

[5]*Hampton* overruled a large number of prior appellate decisions on this discrete point of law. *See Hampton*, 121 S.W.3d at 223, 224-32. We cite and rely on several such cases in this opinion for legal propositions unrelated to the standard of review without further notation.

[6]The 2005 amendments were effective August 28, 2005; Lawrence's primary injury was on May 10, 2005.

7

provides that "the law shall be liberally construed" and "[a]ny doubt as to the right of an employee to compensation should be resolved in favor of the injured employee." *See Angus v. Second Injury Fund*, 328 S.W.3d 294, 297-98, n. 2 (Mo. App. 2010) (quoting § 287.800, RSMo 2000, and confirming that the 2005 amendments do not apply retroactively).

Section 287.220 sets forth the provisions of the Fund and imposes liability on the Fund in certain cases of permanent disability where there is a preexisting disability. *Lewis v. Treasurer of State*, 435 S.W.3d 144, 152 (Mo. App. 2014). For the Fund to be liable, a claimant must have had a preexisting permanent partial disability that existed at the time of the work-related injury and that "was of such seriousness as to constitute a hindrance or obstacle to employment or re-employment." *Concepcion v. Lear Corp.*, 173 S.W.3d 368, 371 (Mo. App. 2005). If a claimant establishes either (1) that the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability or (2) that the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone, then the Fund is liable for that portion of disability that is attributable to the preexisting condition. *Angus*, 328 S.W.3d at 304. In this appeal, Lawrence seeks recovery for permanent *total* disability benefits under the first set of circumstances while the Commission's award for permanent *partial* disability was predicated on the latter.

### *Analysis*

The ALJ explicitly found that, when Lawrence sustained his May 11, 2005 injury, "he had [a] preexisting permanent partial disability [which] was a hindrance and obstacle to his employment or to his obtaining reemployment if he became unemployed." The ALJ further found and concluded "that [Lawrence's] preexisting permanent partial disability combines with the work injury of May 11, 2005 to produce a synergistic effect to result in a greater degree of

8

overall disability than the simple sum of those disabilities." The ALJ concluded that, as a result

of the primary work injury, in combination with his preexisting disability, Lawrence had

sustained a permanent *partial* disability of 12.5% of the body as a whole, and awarded him

$11,216 in benefits from the Second Injury Fund.[7] The ALJ's finding that the Fund is liable for

the preexisting portion of Lawrence's disability was not modified by the Commission or appealed

by the Fund.

Lawrence appealed the ALJ's determination that he is not permanently and totally

disabled to the Commission. At the time of Lawrence's primary injury, section 287.020.7

defined "total disability" as the "inability to return to any employment and not merely [an]

inability to return to the employment in which the employee was engaged at the time of the

accident." § 287.020.7, RSMo 2000. The test for permanent total disability is whether the

worker is able to compete in the open labor market. *ABB Power T & D Co. v. Kempker,* 236

S.W.3d 43, 48 (Mo. App. 2007). "The critical question is whether, in the ordinary course of

business, any employer reasonably would be expected to hire the injured worker, given his

present physical condition." *Id*.

The Commission affirmed and adopted the ALJ's award, but modified it by explicitly

finding not only that all of the witnesses were credible, but also that Lawrence is permanently

and totally disabled. Yet, after finding that Lawrence was totally and permanently disabled, and

adopting and affirming the ALJ's conclusion that the Fund was liable for his preexisting partial

disability, the Commission concluded, nevertheless, that the Fund was not liable for the

preexisting portion of Lawrence's total permanent disability.

---

[7]Whether the "combined resulting disability was greater than the sum of [the] present and previous injuries [and its associated formula] is only relevant if the resulting disability is a permanent partial disability." *Leutzinger v. Treasurer of Mo.-Custodian of Second Injury Fund*, 895 S.W.2d 591, 594 (Mo. App. 1995) (citing § 287.220.1).

9

Fund liability for permanent total disability under section 287.220.1 occurs when the claimant proves that he is permanently and totally disabled due to the combination of his present compensable injury and his preexisting partial disability. *Lewis*, 435 S.W.3d at 157. The claimant must establish first that "he suffered from a permanent *partial* disability as a result of the *last* compensable injury," and then that "that disability has combined with a *prior* permanent *partial* disability to result in total permanent disability." *ABB*, 236 S.W.3d at 50 (citing § 287.220.1).[8] Because the "Fund is liable for the permanent total disability only *after* the employer has paid the compensation due for the disability resulting from the later work-related injury[,] the first assessment is the degree of disability from *the last injury considered alone*." *Id.* If the last injury in and of itself resulted in the employee's permanent total disability, then the Fund has no liability, and the employer is solely responsible for any compensation. *Id.* Here, the Commission did **not** find that the last injury, in and of itself, resulted in the employee's permanent total disability. And the evidence would not support such a finding even if it had.

According to the Commission, Lawrence failed to prove that the Fund was liable for the preexisting portion of his permanent total disability because the record was insufficient to resolve "several important fact questions" necessary for that determination. Chief among those "fact questions" was the matter of Lawrence's need to lie down during the day to relieve his back pain. The Commission found that "[Lawrence's] credible testimony suggests (and we so find) that he lies down during the day to relieve sharp pains in his low back." The Commission concluded, however, that the record lacked "an opinion from a medical expert that employee has

---

[8]Once the claimant establishes that he is entitled to total permanent disability benefits from the Fund, in order to determine the amount of the Fund's liability, the Commission first determines the amount of disability resulting from the primary injury alone (which fixes the amount of employer's liability), and then deducts that amount from the total compensation due the claimant for permanent total disability. *Lewis*, 435 S.W.3d at 158.

a need to lie down during the day, or that such a need is referable to a combination of the primary injury and his preexisting conditions."

The Commission's finding that the record does not contain the requisite medical opinion is in error. Lawrence presented expert testimony from Dr. Koprivica that if a vocational expert determines that he is unable to work, it would be Dr. Koprivica's medical opinion that Lawrence's permanent total disability is the product of the primary injury in combination with his preexisting disabilities. In addition, Dr. Koprivica was asked the following "hypothetical" on cross-examination by Counsel for the Fund:

> Q. [by Counsel for the Fund]: Now, if [Lawrence] is to testify at trial that he has to lie down during the day due to low-back pain subsequent to the May 2005 injury, that he didn't have to do that before that date, would you say that the need to lie down during the day would be due to the May '05 injury, and would that be totally disabling in and of itself?
>
>> [Counsel for Employer/Insurer]: I'll just object to the hypothetical in that it's incomplete. It contains no indication as to when that behavior would have initiated, how frequently it's initiated, if it happened within a month of either date of accident or a year or five years.
>>
>> [Counsel for the Fund]: Well, I'm talking about after the May 2005 injury, anytime after that.
>
> A. [by Dr. Koprivica]: The limitation of lying down in my opinion would be the result of the overall lumbar impairment and resultant disability. So I don't know that that would change my opinion that that injury alone is totally disabling. And I clearly believe that the need to unpredictably recline is going to be totally disabling. But my opinion would be that that incorporates the contribution of his prior disabilities with the additional disability of May 2005.

Regarding this exchange, the Commission stated:

> We acknowledge Dr. Koprivica's testimony, in response to a hypothetical question asking him to assume that employee would identify a need to lie down after the primary injury, that such a need would be referable to employee's overall lumbar condition. But Dr. Koprivica did not identify any such restriction in his report or at his deposition, and his answer to the hypothetical does not constitute an opinion from the doctor that employee does have a need to lie down during the

11

day, or that such a need is a result of a combination of the primary injury and his preexisting conditions. We believe such evidence is necessary where employee's low back condition is medically complex and involves multiple injuries and disabling conditions.

We categorically disagree. Dr. Koprivica's testimony indicates that, in his medical opinion, the need to "unpredictably recline" (*i.e.*, lie down) during the day would be totally disabling, would be due to his overall lumbar impairment, and is due to a combination of his preexisting low back disability and the work injury that he suffered in May of 2005.[9] Dr. Koprivica also stated, both in his report and earlier in his deposition, that if Lawrence is found to be totally disabled, the primary work injury was not totally disabling *in isolation* and that the resulting total disability would be from the synergism of combining those disabilities. There is no question but that the Commission's reasoning is contrary to and unsupported by the actual evidence as found in Dr. Koprivica's testimony.

In addition, Lawrence also provided testimony from vocational expert Michael Dreiling that Lawrence is unemployable due to the combination of the primary injury and Lawrence's preexisting conditions. The Fund did not present any evidence contrary to either expert's testimony. "While we recognize that the Commission does not have 'to accept competent substantial evidence as true, the Commission cannot, nevertheless, arbitrarily cast aside competent, substantial, and undisputed testimony of witnesses who are not shown by the record to have been impeached.'" *Lewis v. Kansas Univ. Med. Ctr.*, 356 S.W.3d 796, 800-01 (Mo. App.

---

[9]To the extent that the Commission suggests there must be medical expert testimony to establish that Lawrence has a need to lie down during the day, we disagree. As stated, Lawrence explicitly testified regarding his need to lie down during the day due to his back spasms, and the Commission specifically found that testimony to be credible. "The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and *extent* of the disability[.]" *ABB Power*, 236 S.W.3d at 51. In any event, any such evidence is relevant only to the question of whether or not Lawrence is totally disabled, and the Commission has concluded that he is totally and permanently disabled; thus, the lack of an "opinion from a medical expert that employee has a need to lie down during the day" is irrelevant.

2011) (citations omitted). Here, despite finding all of Lawrence's evidence "credible" and concluding that Lawrence is permanently and totally disabled, the Commission rejected the foregoing unimpeached testimony and denied the claim for permanent total disability benefits based upon the perceived existence of various alternative theories as to why Lawrence is permanently and totally disabled. The Commissioners "may not arbitrarily disregard and ignore competent, substantial and undisputed evidence" and "base their finding upon conjecture or their own mere personal opinion unsupported by sufficient competent evidence." *Id*. at 800.

We also reject the Fund's suggestion that Dr. Koprivica's response to the hypothetical question is not credible or that the question improperly assumed facts not in evidence. Under section 490.065, which governs the admissibility of expert testimony in civil cases:

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him *at or before the hearing* and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

§ 490.065.3, RSMo 2000 (emphasis added).[10] This provision "allows an expert to consider facts not in evidence to form an opinion or inference," as long as the facts otherwise comply with the statute, *i.e.*, "are of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and [are] otherwise reasonably reliable." *Bruflat v. Mister Guy, Inc.*, 933 S.W.2d 829, 833 (Mo. App. 1996).[11] In this case, however, the hypothetical question set forth facts that were admitted at trial and were documented in the record. Lawrence testified that

---

[10]Section 490.065 is applicable in a workers' compensation case against the Second Injury Fund. *See Elmore v. Mo. State Treasurer as Custodian of Second Injury Fund*, 345 S.W.3d 361, 368 (Mo. App. 2011).

[11]The Eastern District of this Court recently explained that, under the plain language of section 490.065.3, "[a]n expert may base his opinions on facts and data derived from sources outside of court and other than by his own perceptions." *Am. Eagle Waste Indus., LLC v. St. Louis Cnty*, ED 101373, 2015 WL 778197, at *10 (Mo. App. E.D. Feb. 24, 2015). The court further noted that the facts and data on which an expert relies in forming his opinion need not be independently admissible if they otherwise comply with the requirements of section 490.065.3. *Id.* at *11.

13

it was necessary for him to lie down during the day in order to relieve his back pain after the 2005 injury, and the Commission explicitly found that that testimony was credible. Thus, the hypothetical posed to Dr. Koprivica was not in any way improper. An expert certainly can base his opinion on hypothesized facts that are "either in the record or admissible as evidence." *See Hobbs v. Harken*, 969 S.W.2d 318, 323 (Mo. App. 1998). In any event, we consider only those deficiencies in a hypothetical question to which specific objection was made at trial. *Barr v. Vickers, Inc.*, 648 S.W.2d 577, 582 (Mo. App. 1983). Here, it was the Fund's own attorney who asked the hypothetical question on cross-examination. Counsel for the Fund obviously did not object to her own question, nor did she move to strike the answer as non-responsive or otherwise improper.[12] Thus, the Fund cannot now be heard to object to Dr. Koprivica's response.

In sum, the evidence supports the Commission's conclusion that Lawrence is totally and permanently disabled, and the medical evidence conclusively establishes that his preexisting back and shoulder disabilities combined with his primary injury to cause the permanent total disability.[13]

## Conclusion

Viewing the award objectively and examining the evidence in the context of the whole record, as we must under *Hampton*, 121 S.W.3d at 222-23, we conclude that Lawrence has met

---

[12]Counsel for the Employer objected that the question was incomplete, and the Fund's Counsel responded that her question related to any time after the May 2005 injury. Counsel for the Employer made no further objections, and Dr. Koprivica provided his response to the hypothetical question without objection.

[13]With regard to the Commission's other unresolved "fact questions" -- (1) whether there "may be a psychiatric component" to Lawrence's back pain, and (2) the conflict between Dreiling's and Dr. Koprivica's assessments of the preexisting disabilities to his knee and upper extremity -- once the Commission determines that the primary injury has combined with any preexisting disability so as to render the employee permanently and totally disabled, it is unnecessary to further analyze the effect of other preexisting disabilities for that purpose. *See Lewis*, 435 S.W.3d at 157-59. Thus, the question of Lawrence's other preexisting disabilities is moot.

14

his burden under section 287.220 of establishing that he is permanently and totally disabled due to a combination of the primary injury and his preexisting disabilities and that the Fund, therefore, is liable for the preexisting portion of that disability.  The Commission's decision to the contrary is unsupported by competent and substantial evidence and is against the overwhelming weight of the evidence.

Consequently, we reverse the Commission's decision that the Second Injury Fund is not liable for Lawrence's permanent total disability, and we remand with instructions for the Commission to award Lawrence permanent total disability benefits against the Fund.


/s/ JAMES EDWARD WELSH
James Edward Welsh, Presiding Judge


All concur.