

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

RONALD A. LAWRENCE, II
(DECEASED); NANCY LAWRENCE,
DEANNA LAWRENCE, AND MAYME
LAWRENCE,

          Appellants,

  v.

TREASURER OF THE STATE OF
MISSOURI - CUSTODIAN OF THE
SECOND INJURY FUND,

          Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

WD83123

Opinion filed:  July 7, 2020

**APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION**

Division Four:  Karen King Mitchell, Chief Judge,
Thomas H. Newton, and Edward R. Ardini, Jr., Judges

Nancy Lawrence ("Nancy")[1] along with Mayme and Deanna Lawrence (collectively "Children") appeal from the Labor and Industrial Relations Commission's ("Commission") denial of their motion to be substituted as parties to the workers' compensation claim of Ronald A. Lawrence, II, ("Ronald") following his death. Nancy and Children argued they were Ronald's dependents and thereby were entitled to receive the permanent total disability benefits that had previously been awarded to him against the Second Injury Fund ("SIF"). Because the final award

---

[1] Because several parties share the same surname, we refer to some by their first name for the purpose of clarity. No familiarity or disrespect is intended.

in Ronald's claim did not establish that Nancy and Children were Ronald's dependents at the time he sustained his work-related injury, the Commission denied their request. We affirm.

**Factual and Procedural Background**

Ronald filed a claim for workers' compensation benefits for a work-related injury suffered on May 11, 2005. Ronald settled his claim with his employer. However, due to several pre-existing injuries, Ronald pursued permanent total disability benefits against the SIF. A hearing was conducted on August 20, 2013, and, on November 20, 2013, the Administrative Law Judge ("ALJ") issued his decision denying Ronald's claim. The Commission affirmed the decision of the ALJ. This Court reversed the Commission in *Lawrence v. Treasurer of the State of Missouri*, 470 S.W.3d 6 (Mo. App. W.D. 2015) and, on December 1, 2015, the Commission awarded permanent total disability benefits to Ronald ("Final Award").

On March 11, 2019, Ronald passed away from causes unrelated to his work-related injury.

On May 16, 2019, Nancy and Children filed a Suggestion of Death of Ronald A. Lawrence, II and Motion to Substitute Parties ("Motion to Substitute") with the Commission claiming that each were dependents of Ronald at the time of his work-related injury and, upon his death, were entitled to receive his permanent total disability benefits pursuant to *Schoemehl*[2] and its progeny. The Motion to Substitute asserted that Nancy had been Ronald's wife at the time he sustained his work-related injury and remained his wife until his death and that Mayme and Deanna were his children and, thus, each qualified as his dependents. The Commission denied the Motion to Substitute finding that Nancy and Children's status as dependents at the time of Ronald's injury had not been established in the Final Award. This appeal follows.

---

[2] *Schoemehl v. Treasurer of the State of Mo.*, 217 S.W.3d 900 (Mo. banc 2007).

**Standard of Review**

We will not disturb the Commission's decision in a workers' compensation case unless the Commission acted in excess of its powers, the decision was procured by fraud, the facts found by the Commission do not support the decision, or there was not sufficient competent evidence in the record to support the decision. § 287.495.1. We review questions of law *de novo*. *Gervich v. Condaire, Inc.*, 370 S.W.3d 617, 620 (Mo. banc 2012). Therefore, we are not bound by and do not defer to the Commission's interpretation or application of the law. *Id.*

*Carter v. Treasurer of the State of Mo.*, 506 S.W.3d 368, 370 (Mo. App. W.D. 2016)

**Discussion**

In their sole point on appeal, Nancy and Children allege that the Commission erred in denying their motion to be substituted as parties to Ronald's claim arguing that the evidence presented at the hearing before the ALJ established their status as dependents and, therefore, they were entitled, under the Missouri Supreme Court's decision in *Schoemehl v. Treasurer of the State of Missouri*, 217 S.W.3d 900 (Mo. banc 2007), to receive Ronald's permanent total disability benefits. Finding that Nancy and/or Children's status as dependents was not established in the Final Award, we affirm.

The Missouri Supreme Court held in *Schoemehl* "that, when an employee with a permanent total disability dies of a cause unrelated to the compensable work-related injury, the disability benefits shall be paid to the employee's dependents for their lifetime because the surviving dependents are deemed to have the same rights as the employee." *Carter*, 506 S.W.3d at 371 (citing *Schoemehl*, 217 S.W.3d at 902). While this holding was abrogated by legislation enacted in 2008, *Schoemehl* continues to apply to claims for permanent total disability benefits that were pending between January 9, 2007, and June 26, 2008 ("*Schoemehl* window"). *Id.* (citing *Gervich*, 370 S.W.3d at 621; *Strait v. Treasurer of Mo.*, 257 S.W.3d 600, 601 (Mo. banc 2008)). There is no dispute that Ronald's claim was pending during the *Schoemehl* window.

3

However, acknowledging that Ronald's claim was pending during the *Schoemehl* window only begins the analysis. "[T]he issue of a dependent's contingent right to *Schoemehl* benefits for future determination is preserved ***if dependency at the time of the injury is established as a matter of law in the final award***." *Edwards v. Treasurer of the State of Mo.*, 529 S.W.3d 7, 11 (Mo. App. E.D. 2017) (emphasis added). Only when dependency at the time of injury has been established in the final award does "the Commission [have] the authority to further delineate the award…after the employee's death as a 'change in condition.'" *Id.*; *see also Carter*, 506 S.W.3d at 372 (If the Commission's final award does not make findings that establish the claimant's qualifying dependents, the Commission does not have authority in a later proceeding to disturb the finality of the original award, and substantively modify the award by making dependency findings which the Commission did not originally make.). Thus, the issue before us is whether the dependent status of Nancy and/or Children at the time of the 2005 injury was "established as a matter of law in the final award." We find it was not.

The ALJ issued his forty-nine-page award on November 20, 2013, which was subsequently adopted by the Commission and became part of the Final Award. The only references to Nancy or Children in the Final Award can be found in a two-page section addressing Ronald's "current activities" that recounted Ronald's testimony chronicling his injury-related physical limitations. The Final Award noted that Ronald's "wife" performs "housecleaning" activities and that Ronald drives to his daughter's school. The only other reference in the Final Award to Ronald's family is the statement that he "lives with his wife, 11 year old daughter and 18 year old daughter who just started college." The Final Award never identifies the "wife" or daughters by name.

4

A close examination of the Final Award reveals no finding that could be construed to establish Nancy and/or Children as dependents of Ronald at the time of his injury – the finding necessary to preserve their ability to later petition to be substituted as parties to the underlying claim and to receive *Schoemehl* benefits upon Ronald's death. *See Edwards* 529 S.W.3d at 11 (an employee's dependents are determined at the time of the employee's injury and not at the time of death). In addition to the notable failure to identify Nancy or Children by name, the Final Award provides no temporal context that could be used to establish that the "wife" and daughters referenced in the Final Award – entered in 2013 – were dependents of Ronald's at the time of his 2005 injury.[3] As it relates to Nancy and Children, the Final Award at most established that *at the time of the hearing* before the ALJ – in 2013 – Ronald lived with his wife and two daughters, his "wife" had been performing "housecleaning" tasks and he would drive "to his daughter's school." These findings in no manner established "as a matter of law" that any of these individuals were dependents of Ronald's at the relevant time – May 11, 2005.

Nancy and Children seemingly concede that the findings in the Final Award fall short of what is necessary to preserve a dependent's contingent rights to *Schoemehl* benefits as their point relied on wholly ignores the Final Award and instead rests on the proposition that their dependent

---

[3] While the Final Award clearly established that Ronald was married in 2013, the Final Award does not indicate that his spouse was Nancy, how long he had been married or his marital status in 2005. And, although the Final Award does provide the ages of Ronald's daughters in 2013, and this information could be used to establish that they were born prior to the 2005 injury, their ages alone are not sufficient to constitute a finding that the daughters were Ronald's dependents at the time of his injury. Children can be adopted. And while we conclude it to be improper to go beyond the Final Award and examine the underlying record before the ALJ when determining whether an individual's contingent *Schoemehl* rights have been preserved, the dissent's recognition that the evidence adduced at the hearing before the ALJ indicates that both daughters were adopted highlights that mere reference to a child's age is not sufficient to constitute a dependency finding. Indeed, while a child's age will often provide a means to determine whether the child was born prior to a date of injury and thereby might suggest that the child qualifies as a claimant's dependent, the possibility the child was adopted *after* the date of injury reveals the uncertainty and incompleteness occasioned by so heavily leaning on a child's age at a given point in time. As this case reveals, the ages of Children in 2013 contained in the Final Award does not establish them as dependents at the time of the injury. Rather, at a minimum, a finding regarding the dates of each adoption was necessary to confirm whether either or both daughters was a dependent of Ronald's at the time of his injury. The Final Award does not indicate that the daughters were adopted let alone the date of such adoption.

status was sufficiently established by "the evidence presented at the hearing before the ALJ[.]" This reliance on the evidentiary presentation before the ALJ is misplaced. Indeed, it is irrelevant that an individual's status as a dependent of a claimant *could have* been established in a Final Award or that such a finding *would have* been supported by the evidence adduced at the hearing before the ALJ. *See Estate of Dunkin v. Treasurer of the State of Mo.*, 516 S.W.3d 863, 867 (Mo. App. W.D. 2017) (while appreciating that evidence brought forward after the claimant's death provided clarity on the issue of wife's status as a dependent, the relevant question was whether dependency had been established in the final award). In fact, the requirement is just the opposite – dependency at the time of the injury must be "established as a matter of law ***in the final award***."[4] *See Edwards*, 529 S.W.3d at 11 (emphasis added). The reason for this is quite simple: the Commission loses authority to make additional findings or conclusions regarding an employee's dependents once the award becomes final. *See Carter*, 506 S.W.3d at 372 (Once the final award was issued, "the Commission lost its authority to make any findings and conclusions regarding [the] dependents at the time of [the] injury."); *see also Strait*, 257 S.W.3d at 602 (noting that, if employee's claim was no longer pending and her case was closed, "then *Schoemehl* cannot be applied to allow the substitution of [the employee]'s dependents as beneficiaries of her permanent total disability benefits."). It is only when a dependent's contingent right to *Schoemehl* benefits has been preserved in a final award that the Commission retains the necessary authority to further

---

[4] The dissent argues that the Final Award need only "address" dependency and, if it does, this Court may search the complete record of the proceeding before the ALJ for evidence that an individual was a dependent at the time of the injury. The position posited by the dissent not only ignores the finality afforded workers' compensation awards upon expiration of the time for filing an appeal or application for review, but would vest this Court with the authority to disturb such awards and to do so by making our own findings of dependency. This is not a standard articulated in any Missouri case addressing *Schoemehl* benefits. Moreover, the fact that Ronald's injury occurred at a time when the workers' compensation law was required to "be liberally construed" provides no aid to the dissent's position as the pertinent question remains the same – was dependency at the time of the injury established in the final award. *See Carter*, 506 S.W.3d at 372 (this Court examined whether dependency status at the time of the injury was established in the final award even though claimant's injury occurred when courts were required to liberally construe chapter 287, RSMo).

6

delineate the award after the employee's death as a "change in circumstance." *Carter*, 506 S.W.3d at 373. While Nancy and Children have accurately recounted a bevy of evidence adduced at the hearing before the ALJ that likely would have supported a finding establishing them as dependents of Ronald at the time of his injury, the absence from the Final Award of any such finding left the Commission without authority to disturb the Final Award and substitute them as parties to the underlying claim.

## Conclusion

The question of whether a dependent's contingent right to *Schoemehl* benefits has been preserved for future determination is resolved by the contents of the Final Award. Under principles of finality, neither the Commission nor this Court has the authority to substantively modify a final workers' compensation award entered years earlier to make new factual findings concerning dependency which are not contained in the original award itself. In this instance, the status of Nancy and Children as dependents of Ronald at the time of his injury was not established in the Final Award. Thus, the Commission properly denied their Motion to Substitute.

Point denied.

_____
EDWARD R. ARDINI, JR, JUDGE

Judge Mitchell concurs.
Judge Newton dissents in a separate opinion.

7



# In the
# Missouri Court of Appeals
# Western District

RONALD A. LAWRENCE, II          )
(DECEASED); NANCY               )    WD83123
LAWRENCE, DEANNA                )
LAWRENCE, AND MAYME             )    OPINION FILED:  JULY 7, 2020
LAWRENCE,                       )
                                )
            Appellants,         )
    v.                          )
                                )
TREASURER OF THE STATE OF       )
MISSOURI - CUSTODIAN OF THE     )
SECOND INJURY FUND,             )
                                )
            Respondent.         )
                                )

## DISSENTING OPINION

Because I believe that the dependency of the surviving spouse and daughters of Mr. Ronald A. Lawrence, II, was addressed when Mr. Lawrence was awarded Second Injury Fund benefits, thus entitling them to be substituted as dependents following his death under section 287.230, I respectfully dissent and would reverse and remand.[1]

---

[1] Statutory references are to RSMo. (2000 as supplemented through May 2005), unless otherwise indicated.

The Labor and Industrial Relations Commission (Commission) awarded Mr. Lawrence permanent total disability benefits from the Second Injury Fund in December 2015 after this Court reversed and remanded the Commission's prior denial of those benefits. *Lawrence v. Treasurer of Mo.*, 470 S.W.3d 6, 17 (2015). He had filed a claim for workers' compensation and Second Injury Fund benefits following a work-related injury in May 2005.[2] *Id.* at 9. Mr. Lawrence ceased working in September 2005 on the advice of a physician. He settled claims with the employer for the primary injury nearly eight years later in March 2013, and an administrative law judge (ALJ) approved that agreement. *Id.* During the hearing to consider the claim against the Second Injury Fund, conducted before an ALJ in August 2013, Mr. Lawrence responded to a question about a current address and testified that he had resided at this address for twenty-one years. Mr. Lawrence testified about being married to Ms. Nancy Lawrence for more than twenty-five years; and having two daughters, Ms. Deanna Lawrence (11 ½) and Ms. Mayme Lawrence (18 ½).[3]

---

[2] Note that section 287.800, which required the Workers' Compensation Law to be "liberally construed with a view to the public welfare," was not changed until the 2005 amendments took effect in August 2005, or *some three months after* Mr. Lawrence was injured. *See Custer v. Hartford Ins. Co.*, 174 S.W.3d 602, 610 n.3 (Mo. App. W.D. 2005) (reporting that strict construction rule in section 287.800 did not take effect until August 28, 2005). As we observed in *Small v. Red Simpson, Inc.*, 484 S.W.3d 341, 345 (Mo. App. W.D. 2015), this change "may not be applied retroactively." *See also Schoemehl v. Treasurer of Mo.*, 217 S.W.3d 900, 901 (Mo. banc 2007) (stating that liberal construction requires that "[a]ny doubt as to the right of an employee to compensation should be resolved in favor of the injured employee."), abrogated on different ground by statute.

[3] Mr. Lawrence's daughters would have been ages 10 and 3 when he was injured on the job in May 2005. An October 2006 vocational evaluation introduced during the Second Injury Fund hearing supports this calculation by noting that Mr. Lawrence was married "and has two children at home, ages 11 and four."

The dependency status of Ms. Lawrence and the two girls at the time of the injury was not contested when Mr. Lawrence's Second Injury Fund claim was heard and decided, and the ALJ made at least one "finding of fact" about the family situation unrelated to Mr. Lawrence's physical capabilities in the November 2013 ruling.[4]  The facts addressing physical condition and relevant to his claim for permanent total disability benefits included the following:  The ALJ found that Mr. Lawrence did some work in the home, including helping with the laundry, but that his wife did the housecleaning.[5]  The ALJ also indicated that while Mr. Lawrence could not and did not drive long distances, he did drive one of the daughters to school on a typical day.[6]  Also included in the ALJ's findings of fact is a statement relevant to a dependency claim rather than to a disability claim:  "Claimant lives with his wife, 11 year old daughter, and 18 year old

---

[4] The Commission adopted the ALJ's ruling as supplemented by its August 2014 opinion which noted that the witnesses did not lack credibility but that Mr. Lawrence was not persuasive as to his claim of permanent total disability. The ALJ had awarded Mr. Lawrence permanent partial disability benefits of $11,216.  Where the Commission has adopted the ALJ's opinion, the ALJ's findings and conclusions provide the basis for judicial review.  *Hayes v. Ginger C. LLC*, 582 S.W.3d 140, 146 (Mo. App. W.D. 2019).  The majority disagrees, but as discussed below, it is appropriate for this Court to look to the *record* in this case to determine whether dependency was addressed during the Second Injury Fund proceeding.

[5] The ALJ specifically stated, "He does not do housecleaning.  His wife does that.  He does help with the laundry. . . .He does not carry the clothes."  This finding is supported by Mr. Lawrence's testimony directed toward his physical capabilities that laundry is part of his routine because he has girls, but that his wife and kids carry the laundry upstairs.

[6] In this regard, the ALJ stated, "In a typical day, Claimant gets up, takes a shower, drives his daughter to school, does laundry, and takes out the trash.  He can drive.  He drives every day. . . .He drives to the doctor's office, to the store, and to his daughter's school."  Mr. Lawrence's testimony supports these findings.  According to Mr. Lawrence, this daughter had just left for college, but "is still a resident in my household."  This information was not related to Mr. Lawrence's physical capabilities.  Given that this child, Mayme, was of college age when the 2013 hearing was conducted, medical records dated July 14, 1996, show that Mr. Lawrence had just adopted her from China.  Another medical record in the legal file shows that Mr. Lawrence was evaluated and found capable of assuming the responsibilities of adopting and parenting in October 2001, raising an inference that his younger daughter may also have been adopted.

3

daughter who just started college."[7]  Among the ALJ's "rulings of law" is the observation that Mr. Lawrence helps with the laundry and is able to drive and drives daily.[8]

After Mr. Lawrence died of causes allegedly unrelated to the work injury on March 11, 2019, Ms. Lawrence and their two daughters filed a suggestion of Mr. Lawrence's death and motion to substitute parties with the request that his claim be revived and proceed in their names as Lawrence dependents.[9]  The

---

[7] This finding of fact is supported by Mr. Lawrence's testimony naming his wife and daughters and reciting the children's ages.  The medical records introduced during the hearing show that "Nancy" called a physician in July 2005, one month after the workplace injury, to see if Mr. Lawrence could get a prescription for pain medication due to a back injury and requested that he be seen "soon" because he was in a lot of pain.  "Nancy A. Lawrence" is also identified as Mr. Lawrence's emergency contact in another medical record, dated September 21, 2000.

[8] I would also note that the ALJ announced as the hearing began that Mr. Lawrence had indicated that his wife was acquainted with the ALJ's wife.  And the ALJ had a vague recollection that he and Mr. Lawrence may have met many years before although he could not recall under what circumstances.  Specifically, the ALJ stated the following:

> Mr. Lawrence brought up the fact that his wife knows my wife.  He looks familiar.  And there was some discussion that we had met with you, [claimant's counsel], at I think a prior prehearing conference in connection with the employee.  I have some vague recollection that you and I may have met in the past.  And if so, it's been many years ago.
>
> CLAIMANT:  Correct.
>
> [ALJ]:  I don't know when it was or in what connection it was.  And I don't recall us having had any contact as friends or any social contact in probably 20 or 25 years.
>
> Whatever contact we had, I think it was probably in connection with maybe my wife or friends of my wife or maybe my wife's brother or something like that but, [State's counsel], I did want to make a record of that fact.
>
> He does look familiar and many, many years ago, I think I was acquainted with him.  I don't recall ever having been in his home on a social occasion but I just remember the face and remembered the name when I saw him today.

Counsel for the Treasurer had no objection to proceeding in light of this attenuated relationship.

[9] Under the law in effect when Mr. Lawrence was injured, "dependent" was identified as someone actually dependent for support on the claimant's wages "at the time of the injury," and the following individuals were "conclusively presumed to be totally dependent for support upon a deceased employee": "[a] wife upon a husband with whom she lives" and "[a] natural, posthumous, or adopted child or children, whether legitimate or illegitimate, under the age of eighteen years. . . ."  § 287.240(4), RSMo. (2000).  The *Schoemehl* decision and its impact on the dependents of Second Injury Fund award recipients is addressed in more detail below.

4

Commission denied the motion in July 2019 on the grounds that "the employee's claim is no longer pending and because no dependency determinations were made while it was pending." According to the Commission, "the award is final and *Schoemehl* cannot be applied to allow the substitution of Nancy Lawrence, Deanna Lawrence or Mayme Lawrence as beneficiaries of employee's permanent total disability benefits."[10] Ms. Lawrence and Mr. Lawrence's daughters, Deanna and Mayme, filed this appeal.

## Legal Analysis

The Lawrences argue that the Commission erred in denying the motion to substitute them as parties to Mr. Lawrence's Second Injury Fund claim, thus, entitling them to draw permanent total disability benefits. The Lawrence dependents argue the evidence presented during Mr. Lawrence's hearing established that they were his dependents.

We affirm the Commission's decision "unless it is not authorized by law or supported by competent and substantial evidence on the *whole record*. Mo. Const. art. V, sec. 18." *Gervich v. Condaire, Inc.*, 370 S.W.3d 617, 620 (Mo. banc 2012). Section 287.495.1 requires that we review questions of law only and that the Commission's decision should be modified, reversed, remanded or set aside only where, "(1) the commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the

---

[10] The dissenting commissioner opined that the majority had misinterpreted *Estate of Dunkin v. Treasurer of Mo.*, 516 S.W.3d 863 (Mo. App. W.D. 2017), in reaching its conclusion.

5

commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award."  *Id.*  We review questions of law *de novo*; accordingly, we are "not bound by the commission's interpretation and application of the law, and no deference is afforded to the commission's interpretation of the law."  *Id*.

The Missouri Supreme Court determined that, under the version of the Workers' Compensation Law in effect in 2001, the dependents of an employee who dies from a cause unrelated to a workplace injury while receiving Second Injury Fund benefits, are entitled to payment of the unpaid, unaccrued balance of the employee's permanent total disability benefits.  *Schoemehl v. Treasurer of Mo.*, 217 S.W.3d 900, 903 (Mo. banc 2007).  The Legislature thereafter amended the law to reject and abrogate its holding, as well as "all cases citing, interpreting, applying, or following this case."  § 287.230.3, RSMo. (2008); *see also Carter v. Treasurer of Mo.*, 506 S.W.3d 368, 371 (Mo. App. W.D. 2016) ("In 2008, the legislature specifically rejected and abrogated *Schoemehl* by amending several sections of the Workers' Compensation Law to make clear that permanent total disability benefits are payable only during the injured employee's lifetime and not to his dependents after the employee's death when the employee dies from a cause unrelated to the work injury.").

Still, Missouri courts subsequently determined that "the holding in *Schoemehl* continues to apply to claims for permanent total disability benefits that were pending between January 9, 2007, the date the [s]upreme [c]ourt issued

6

the *Schoemehl* decision, and June 26, 2008, the effective date of the 2008 amendments." *Id.; see also Estate of Dunkin v. Treasurer of Mo.*, 516 S.W.3d 863, 866 (Mo. App. W.D. 2017) ("[S]o long as the claim was pending during the *Schoemehl* window and the final award established the spouse's dependency status, the 'issue of the dependent's contingent right to *Schoemehl* benefits' is preserved 'for future determination' because section 287.470 allows an award to be reviewed by a party in interest, *e.g.*, a dependent, due to a change in condition, *e.g.*, the employee's death. *Carter*, 506 S.W.3d at 373."). Because Mr. Lawrence's work-related injury predated the 2008 statutory amendment and his claim under the Second Injury Fund was pending between the date *Schoemehl* was decided and the date the Workers' Compensation Law was amended to abrogate the case, the Lawrences may be entitled to receive the permanent total disability benefit as successor dependents.

Critical to the determination is whether the Lawrences' dependency status was *addressed* in the final award granting Mr. Lawrence permanent total disability benefits. We are asked to view findings of fact and conclusions of law in that award in light of the evidence of record. I have been unable to find any cases that expressly prevent a court from looking to the record for *factual support* of dependency findings in a Second Injury Fund award. Still, I am mindful of (1) the Legislature's clear preference for an end to lifetime benefits for dependents, (2) the passage of time since the *Schoemehl* window opened and closed (over which the Lawrences had little control), and (3) the Commission's

7

lack of authority to "further delineate, expound upon, or enforce the award" after the time for filing an appeal or an application for review has expired. *Carter*, 506 S.W.3d at 372.

Nevertheless, Mr. Lawrence's work-related injury occurred when the Workers' Compensation Law required a *liberal* construction, and it is axiomatic that "*the legislature cannot change the substantive law for a category of damages after a cause of action has accrued.*" *Gervich*, 370 S.W.3d at 623 (emphasis added). Accordingly, I would find that the award *addressed* the dependency of Mr. Lawrence's wife and daughters in sufficient detail to allow this Court to go to the record underlying that award to determine whether the Commission's dependency findings were supported.[11]

The cases that consider the entitlement of dependents to succeed to the claimant's benefits have evolved over time. The earliest cases decided after *Schoemehl* addressed the entitlement question depending on whether the claimant had died during the proceedings or within the "*Schoemehl* window." These cases pre-date the 2013 ALJ hearing and 2015 Commission award in this case, and, for the most part, the courts agreed with the Commission that it lacked

---

[11] In a 2009 review of the Second Injury Fund and *Schoemehl*, the author discusses an audit that raised alarms about the Fund's solvency, but also observed that the low number of those receiving permanent total disability benefits and "the even lower number of recipients who die each year" would limit those affected in the short term to about 39 recipients. Jason R. McClitis, Note, *Missouri's Second Injury Fund—Should It Stay or Should It Go?: An Examination of the Question Facing the Missouri State Legislature*, 74 Mo. L. Rev. 399, 408-09 (2009). The author also reminds us of the remedial purpose of the Second Injury Fund and its function within the workers' compensation system, which protects employers by limiting monetary awards and tortious lawsuits, while helping employees with medical expenses, payment for lost wages, and compensation for permanent disabilities and rehabilitation. *Id.* at 401. The Second Injury Fund was designed to encourage the employment and retention of disabled individuals by shielding employers from responsibility for non-work-related disabilities. *Id.* at 401-02.

8

jurisdiction to decide whether a surviving dependent could receive the claimant's permanent total disability benefits where dependency had not been determined under the award, and the award had become final before *Schoemehl* was decided. *See, e.g., Lawson v. Treasurer of Mo.*, 281 S.W.3d 851, 854 (Mo. App. S.D. 2009); *Cox v. Treasurer of Mo.*, 258 S.W.3d 835, 838 (Mo. App. E.D. 2008); *Winberry v. Treasurer of Mo.*, 258 S.W.3d 455, 457 (Mo. App. E.D. 2008); and *Buescher v. Mo. Highway & Transp. Comm'n*, 254 S.W.3d 105, 108 (Mo. App. W.D. 2008). Where the claim proceedings remained pending when *Schoemehl* was decided and the claimant died, on the other hand, the courts found that the dependent could be substituted and was entitled to survivor benefits. *Gervich*, 370 S.W.3d at 619, 624 (finding wife entitled to receive claimant's benefits as dependent; claimant had died outside "*Schoemehl* window" in 2009, but proceeding was pending since 2006 injury, so she could be substituted as dependent after claimant's death); and *Strait v. Treasurer of Mo.*, 257 S.W.3d 600 (Mo. banc 2008). In *Strait*, the court determined that the ex-husband of the claimant and father of her minor children could be substituted as a claimant on her behalf because she had died within the period for taking an appeal from the award of permanent total disability benefits. *Id.* at 601. The court also permitted the ex-husband to file with the Commission a motion to amend the award, which the appellate court had affirmed, to substitute the children as recipients of their mother's benefits, stating, "Because Strait's case was still pending on the date the *Schoemehl* decision issued, *Schoemehl* applies to Strait's case, and the

9

Commission must follow it." *Id.* at 602. *See also Spradling v. Treasurer of Mo.*, 415 S.W.3d 126, 128, 133 (Mo. App. S.D. 2013); *Goad v. Treasurer of Mo.* 372 S.W.3d 1, 3, 11 (Mo. App. W.D. 2011).

Other appellate rulings rendered before the ALJ hearing and Commission award in this case include the following: *White v. University of Missouri, Kansas City*, 375 S.W.3d 908, 912-13 (Mo. App. W.D. 2012) (holding that wife's claim for successor benefits under *Schoemehl* was contingent on her being married to claimant at his death, so Commission erred in attempting to adjudicate her entitlement to those benefits before he died; her dependency status, however, is determined as of the time of claimant's injury which occurred before law changed); and *Tilley v. USF Holland, Inc.*, 325 S.W.3d 487, 490-91, 494 (Mo. App. E.D. 2010) (ruling Commission did not err in finding wife entitled to recover benefits under *Schoemehl* because claimant was injured in 2003, case was still pending, and wife was added to claim during "*Schoemehl* window"). In *Taylor v. Ballard R-II School District,* 274 S.W.3d 629 (Mo. App. W.D. 2009), this Court considered whether the husband of the deceased claimant, who had committed suicide the day the ALJ awarded her permanent total disability benefits, was entitled to her benefits. While the Commission allowed the husband to be substituted as a party on her behalf when it affirmed the award, it failed to rule on whether, as the surviving spouse, the husband was entitled to her benefits under *Schoemehl*. *Id*. at 630. He appealed to this Court to clarify his rights under *Schoemehl*; we concluded that dependency had to be established

10

before the claim was final and that the Commission, by granting the husband's motion for substitution, implicitly adopted its factual assertion that the husband was the claimant's dependent when she was injured. *Id.* at 634.

According to this Court, the case law suggested that a claim for survivorship benefits must be brought prior to the commission's final award or on appeal within 30 days of the award. *Id.* at 633. But we were analyzing cases decided before 2009 where the focus was on alleged spouses who sought survivor's benefits where the spouse had filed for a survivorship determination after the award had become final or the claimant, whose award was final, had died before *Schoemehl* was decided. *Id.* at 633 n.7.[12] *See also Bennett v. Treasurer of Mo.*, 271 S.W.3d 49, 50, 53 (Mo. App. W.D. 2008) (refusing to apply *Schoemehl* because claim was finally adjudicated in 2004; claimant could not later add husband as additional party to ensure he would get dependent benefits under *Schoemehl*).

---

[12] In *Taylor v. Ballard R-II School District*, 274 S.W.3d 629, 633-34 (Mo. App. W.D. 2009), we viewed the prior case law as presenting a procedural issue, and, indeed, in prior cases, the Commission often determined that it lacked jurisdiction to decide a claim for survivorship benefits. In this regard, we stated,

> Since *Schoemehl* was decided, Missouri courts have denied survivorship benefits to dependents only on procedural grounds. Specifically, where a claim for survivorship benefits was not brought prior to the Commission's final award or on appeal within thirty days after the award, the survivorship claim was ruled untimely as a procedural matter because the case was no longer "pending." Under section 287.495, the final award of the Commission is conclusive and binding on the parties unless either party appeals the award to the appellate court within thirty days. Once the time for appeal has passed, the Commission has no authority to further delineate, expound upon, or enforce the award. Essentially, the courts reasoned that the Commission lacks jurisdiction to determine permanent total disability survivorship benefits after a final award has been entered and the time for appeal has passed, and thus, the Commission cannot reconsider and modify the final award.

*Id.*

11

Cases decided since Mr. Lawrence was awarded Second Injury Fund benefits are somewhat more nuanced in light of their circumstances and the passage of time since *Schoemehl* was decided, with the reviewing court looking more critically at the award to see whether dependency status had been addressed,[13] established,[14] or determined[15] before it became final. In *Edwards v. Treasurer of Mo.*, 529 S.W.3d 7, 9, 12 (Mo. App. E.D. 2017), the court held that where a 2009 permanent total disability benefit award referred several times to the employee's "wife," this was not sufficient to establish that the appellant was the employee's wife or his dependent when he was injured in 2006. She had sought successor benefits after he died in 2014. *Id.* at 9. One additional fact that, in my view, distinguishes *Edwards* is that the employee's workplace injury occurred ***after*** the Legislature removed the liberal construction provision from the Workers' Compensation Law. *Id.* at 9 (stating that injury occurred in 2006). Similarly, in *Estate of Dunkin*, 516 S.W.3d at 864, which also involved a claimant injured after the law changed in 2005 (injury occurred in 2008), this

---

[13] *Carter v. Treasurer of Mo.*, 532 S.W.3d 203, 209 (Mo. App. W.D. 2017) ("Thus, a procedure for obtaining *Schoemehl* benefits was available to [Ms.] Carter. . . . [H]owever, the failure to *address* her dependency status in [Mr.] Carter's final award precludes the Commission from now determining her entitlement to *Schoemehl* benefits." (emphasis added)) (citing case law that left compensation for future care open thus giving Commission retained authority to determine extent of employer's liability for open claim, *State ex rel. ISP Minerals, Inc. v. Labor & Indus. Relations Comm'n*, 465 S.W.3d 471, 476 (Mo. banc 2015)).

[14] *Estate of Dunkin v. Treasurer of Mo.*, 516 S.W.3d 863, 866 (Mo. App. W.D. 2017) ("[T]he issue before this court is whether Deborah's dependency status was *established* in the final award entered in Leonard's underlying workers compensation case." (emphasis added)).

[15] *White v. Univ. of Mo., Kansas City*, 375 S.W.3d 908, 912 (Mo. App. W.D. 2012) ("Even though Gail White's dependency status is *determined* prior to the date of the statutory amendments, her right to receive those benefits remains contingent, and cannot be adjudicated at this time." (emphasis added)).

12

Court found insufficient to establish a wife's dependency a statement in the 2012 award that the claimant had been married for almost forty-two years.

Relying on *Estate of Dunkin*, the Commission stated the following regarding the Lawrences' status when Mr. Lawrence was awarded benefits:

> Nancy Lawrence, employee's alleged widow and employee's alleged daughters Deanna and Mayme Lawrence were not named as parties in the underlying award. The ALJ's passing mention of employee's "wife" and "daughters" in a section of his forty-nine page award that exhaustively recites all the testimony and evidence presented in the case does not constitute a finding that established Nancy, Deanna or Mayme's dependency on employee at the time of his work injury.

*Estate of Dunkin* does not require that the purported dependents be named as parties in the underlying award, nor would they necessarily be parties in a proceeding brought to determine the claimant's entitlement to benefits, particularly where the claimant was still alive. We found in *Estate of Dunkin* that the employee's alleged wife was mentioned just once in the award: "a single, ambiguous reference to Leonard's marital status—'[h]e stated that he had been married for almost 42 years.'" *Id.* at 866. In this Court's view, because the statement was "not couched in the present tense" and was without a "temporal context," it "does not establish that Leonard was married *at the time of injury*," the touchstone for finding dependency when a final award is made in a workers' compensation case. *Id.* (citing *Carter*, 506 S.W.3d at 371). That the decedent's wife was not named in the award was not central to the holding, but it was mentioned as another factor. *Id.* And I reiterate that in *Estate of Dunkin* the

13

employee's workplace injury occurred *after* the Legislature removed the *liberal* construction provision from the law.

Similarly, in *Carter*,

> The final award on Phillip's claim . . . did not mention that [Ms.] Carter and Phillip were married or that [Ms.] Carter was Phillip's dependent at the time of his injury. Indeed, [Ms.] Carter concedes that '[t]he award contained no factual findings or conclusions regarding anyone's dependency on Phillip Carter.'

*Carter*, 506 S.W.3d at 372. *Carter* is distinguishable not because the claimant's workplace injury occurred after the law changed in 2005—it actually occurred in January 2005—but because the award had absolutely *nothing* in it about the claimant's dependents. *Id.* at 370.

These cases, all decided *after* the award here was issued in 2015, concern what is missing in the findings and conclusions and do not necessarily require any particular Commission statement concerning dependency status. And while we stated in *Carter* that a procedure for obtaining *Schoemehl* benefits was available to Ms. Carter in 2009 when her husband's Second Injury Fund award became final, I do not believe that Mr. Lawrence failed to avail himself of that procedure, undefined as it was in the law or the Missouri Code of State Regulations, when he litigated his claim in 2013-2015. *Id.* at 373. Mr. Lawrence raised the fact of his marriage and parentage and the names of his wife and daughters during the hearing, and this information had everything to do with *addressing* and *establishing* dependency status and nothing to do with physical capabilities, which were the focus of the proceeding.

14

The Lawrences have not requested that the earlier proceeding be reopened for determining the dependency status. They contend that the final decision raised the issue and is supported by the record. *Id.* (stating that Commission lacks the statutory authority to reopen the record and thus that *Schoemehl* benefits cannot be determined or awarded "when there is a final decision on the claim that does not raise the issue."). I agree. Under the circumstances in this case, i.e., Mr. Lawrence's workplace injury occurred when the Workers' Compensation Law was to be construed *liberally,* and because the Legislature cannot change the substantive law for a category of damages after a cause of action has accrued, I believe that the multiple mentions of dependents in the award sufficed to give the Commission, and this Court, the authority to look to the record for support in deciding whether dependency was established when the award was made.

*The Daughters*

The Commission's 2013 findings of fact refer more than once to the presence of two daughters in Mr. Lawrence's home and even sets forth their ages. I believe that this is sufficient to show that the issue of their dependency when the work-related injury occurred in 2005 was raised and gives this Court a basis, under a *liberal* construction of the law, for examining the record to support whether their dependent status was established and preserved their contingent right to *Schoemehl* benefits. As well, under analogous precedent, when we consider if issue preclusion collaterally estops a litigant from arguing on appeal

15

that the evidence was insufficient to prove a claim against her, we have examined the record from a prior proceeding to determine whether the issue was previously decided. *See, e.g., Johnson v. Mo. Dep't of Health & Senior Servs.*, 174 S.W.3d 568, 579-80, 584 (Mo. App. W.D. 2005) (concluding on the basis of record from prior proceeding in which appellant's professional nursing-home administrator license was revoked that appellant could not argue on appeal that Department failed to make a case for placing her name on employee disqualification list). Similarly, as the issue of dependency status currently before us was previously addressed in the award, I believe that we may examine the record from the prior proceeding to determine whether estoppel precludes this from even being an issue in the case.

Mr. Lawrence's uncontested testimony directly supports the Commission's findings and names the children; the medical records submitted in support of his claim further contain references to the children, their ages near the time he was injured, and the fact of their adoption in the years preceding the workplace injury. The Commission has no need to further delineate, expound upon, or enforce the prior award. Mr. Lawrence had two daughters, Deanna and Mayme, who were ages 3 and 10 when his work-related injury occurred and are conclusively presumed under the law to be his dependents.

*The Wife*

The award is not silent as to Mr. Lawrence's wife. It may not contain her name or the length of time they were married or whether they were married when

16

the injury occurred, but it was not clear until *Edwards, Estate of Dunkin,* and *Carter*, all decided after the Second Injury Fund hearing and award here, that more would be required. Moreover, as I have explained, those cases are readily distinguished on the facts. The evidence and testimony support the conclusion that Nancy was Mr. Lawrence's wife when he was injured, and she is conclusively presumed under the law to be his dependent.

The award made specific findings of fact referencing Mr. Lawrence's marriage and paternity in the present tense, along with references to the domestic arrangements, such as who carried out the chores. When these references are viewed in light of the *whole record*, it is clear that Mr. and Ms. Lawrence were residing with their children in the same home at the time of the hearing *and* when his work-related injury occurred. To ignore the supporting evidence, including testimony that recited the wife's name and the duration of the marriage, as well as medical records showing her presence in Mr. Lawrence's life before and after he was injured in the workplace and a transcript that demonstrates a distant social relationship between Mr. and Ms. Lawrence and the ALJ and his wife that could have required the ALJ's recusal, is to ignore the law's requirement when Mr. Lawrence was injured that it be *liberally* construed and that the cause of action here accrued before the substantive law changed. Where the contingent right to benefits is preserved, the Commission has the statutory authority to further delineate the award after the claimant's death due to a change in condition, i.e., whether the death was unrelated to the work injury and the surviving spouse met

17

the contingencies of remaining married to the claimant at his death. *Carter*, 506 S.W.3d at 373. With the matter still open, I would contend that the Commission erred in denying the Lawrences' motion.

I would grant this point, and I would remand to the Commission to substitute the Lawrences as dependents and to determine whether they remain entitled to the Second Injury Fund benefits Mr. Lawrence was awarded for his lifetime, i.e., whether Ms. Lawrence was still a dependent with survivorship rights when he died and whether he died of causes unrelated to the workplace injury.

## Conclusion

Because I have concluded that the Commission erred in finding that the Lawrences' dependent status was not sufficiently established in the final award granting him permanent total disability benefits as supported by the record from Mr. Lawrence's Second Injury Fund hearing, I would reverse and remand for further proceedings consistent with this opinion.

/s/ Thomas H. Newton  
Thomas H. Newton, Judge

18