

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| ROBERT BALLIU, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD87032 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | January 8, 2025 |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI – CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | |

### Appeal from the Missouri Labor and Industrial Relations Commission

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge,
Gary D. Witt and Thomas N. Chapman, Judges

Mr. Robert Balliu ("Balliu") appeals the decision of the Missouri Labor and

Industrial Relations Commission ("the Commission"), which adopted the award of an

Administrative Law Judge ("ALJ") concluding that the Second Injury Fund ("SIF") bears

no worker's compensation liability for Balliu's work-related injury. We affirm.

## Factual and Procedural History[1]

Balliu began working for his employer as a printer repair technician in 1985. In 1999, Balliu suffered a work-related bilateral hernia but did not pursue a worker's compensation claim. Following successful hernia-repair surgery, Balliu returned to his same position and continued to perform the same tasks without any formal restrictions or accommodations prescribed by his doctor.

In 2004, Balliu suffered a right-sided hernia. After another successful hernia-repair surgery, Balliu again returned to work without any formal restrictions or accommodations. He continued to perform his same work tasks, continued to lift up to seventy-five pounds when required to do so, and he received positive performance reviews. Off the job, Balliu could travel over one-hundred miles in a car without issue and could bicycle up to ten miles on biking excursions with his wife.

On May 6, 2015, Balliu suffered the injury for which he seeks compensation from the SIF ("primary injury"). While alone at a repair job, Balliu attempted to lift a heavy document feeder. During the lift, Balliu felt excruciating pain in his right hip and groin.

---

[1] On appeal of a final award of the Commission, "[w]e review the evidence 'in the context of the whole record' rather than in the light most favorable to the award." *City of Clinton v. Dahman*, 669 S.W.3d 142, 148 (Mo. App. W.D. 2023) (quoting *Harris v. Ralls Cnty.*, 588 S.W.3d 579, 597 (Mo. App. E.D. 2019)). "However, we defer to the Commission's determinations as to the credibility of witnesses and the weight given to conflicting evidence; unless there is evidence of fraud, the Commission's factual findings are conclusive." *Id.* (citing *Dubuc v. Treasurer of State*, 659 S.W.3d 596, 601 (Mo. banc 2023)).

Balliu initially sought treatment from the surgeon who had previously performed his 2004 hernia repair. That surgeon confirmed through a CT scan that Balliu had not suffered another hernia.

Balliu then visited a second doctor who diagnosed him with ilioinguinal neuralgia, resulting from impingement of his ilioinguinal nerve. To treat the injury, Balliu was prescribed multiple pain medications, went through a course of physical therapy, received nerve-blocking treatment on his ilioinguinal nerve, and underwent radiofrequency ablation. Despite these treatments, Balliu's condition did not improve. He reached his maximum medical improvement on October 20, 2015, and never returned to work due to his pain.

Balliu reported that his pain prevents him from riding comfortably in car for more than forty minutes, exercising in any capacity, and sitting or standing for more than a few hours. And, his pain requires him to spend up to seven hours per day reclining, which is the only time he is able to feel completely pain free.

Balliu pursued a claim of worker's compensation against his employer and the SIF for the 2015 injury. He settled his claim against his employer for payments by the employer totaling $84,141.12 for temporary total disability compensation, medical treatments, and a lump sum payment based upon a stipulated permanent partial disability of 25% to the body as a whole.

Balliu then pursued the present claim against the SIF, contending that his 1999 hernia created a disability that combined with his 2015 injury to leave him permanently and totally disabled.

At a hearing before the ALJ, on December 9, 2022, Balliu testified to the above facts and presented the report of an Independent Medical Examiner ("IME"),[2] his medical records, and the testimony and report of a vocational expert.

In his original report, the IME determined that Balliu suffered from ilioinguinal neuralgia, nerve pain in the area of Balliu's prior hernia-repair surgeries on his right side; that Balliu's 2015 primary injury was "the direct, proximate, and prevailing factor" causing his pain; and that that 2015 primary injury "*in isolation alone*" required the following accommodations: "[n]o lifting more than 15 pounds. No standing, sitting, or walking more than 20 minutes. The ability to be able to recline several times a day to relieve his groin pain. No squatting, twisting, or bending. Ice packs available for treatment of his groin pain." The IME rated Balliu's primary injury as a 25% disability to the body as a whole and concluded that Balliu would likely be unemployable as a result of the primary injury if his condition could not be improved. The IME also concluded that the "preexisting disability of the 1999 work-related injury directly and significantly aggravated and accelerated the subsequent work-related injury of May 6, 2015."

The IME subsequently prepared an addendum to his initial report, which stated that he believed Balliu's 1999 hernia left him with a 15% permanent partial disability to the body as a whole ("preexisting disability") and made his 2015 injury more likely to

---

[2] Pursuant to the directive of section 509.520 (Supp. III 2023), we do not use any witness names in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2000), as supplemented through May 6, 2015, unless otherwise indicated.

occur.  However, the IME concluded in the addendum that "the restrictions for the May 6, 2015, work injury would be *unchanged* when considering his preexisting work injury of 1999."  (emphasis added).  That said, the IME ultimately concluded:

> It is the opinion of this examiner that Mr. Balliu is permanently totally disabled based upon the combination of his injury in 1999 with his current injury of May 6, 2015.  The injury of 1999 made him much more susceptible to a re-injury, and he was having symptoms of groin pain since the 1999 injury.  It is the opinion of this examiner that the work-related injury of 1999 and the subsequent disability directly and significantly aggravated and accelerated the subsequent work-related injury of May 6, 2015.  In addition, the symptoms of the 1999 work injury were aggravated and accelerated by the May 6, 2015, work injury.

Vocational Expert, reviewing and relying primarily on the IME's report and addendum, opined that Balliu's permanent work restrictions resulting from the primary injury—particularly his need to recline for significant portions of the workday—left him unemployable except for sedentary jobs, which universally require education and skills that Balliu does not possess.  Based on these limitations, Vocational Expert concluded that Balliu was not employable in a competitive labor market.  Although Vocational Expert considered the restrictions following Balliu's 2015 primary injury *alone* to be totally disabling, he nonetheless concluded that "[Balliu's] vocational disability is as a result of the underlying combination of his 1999 and 2015 injuries and restrictions."

The ALJ determined that Balliu was not entitled to compensation from the SIF. The Commission adopted the ALJ's findings and conclusions with a few minor alterations, denying SIF compensation to Balliu and specifically concluding, in pertinent part:

[We] find the *credible* reading of the evidence presented included that the claimant's 2015 work injury and restrictions functional limitations which flowed from that injury rendered Claimant permanently and totally disabled in isolation. The testimony of the claimant and direct and cross examination indicated that after the 1999 work injury the claimant [re]turned to no restriction full-time work. The claimant was regularly provided good work evaluations and neither his pay, work hours nor responsibilities were diminished in any fashion by any limitations.

. . . .

[We] find for the reasons set forth above the claimant failed to meet his burden of proof to establish liability of the Second Injury Fund in this matter. Specifically, [we] find the claimant's last accident of May 6, 2015 and the documented need to recline multiple times per day sometimes up to 7 hours per day established by medical and vocational testimony from the last accident alone and in isolation are the most significant factors which rendered the claimant permanently and totally disabled as a result of the injury from the May 6, 2015 accident alone.

(emphasis added).

Balliu appealed the Commission's final award, raising two points on appeal.

**Standard of Review**

The review of the Commission's final award is governed by section 287.495,

which provides in relevant part:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the commission do not support the award;
(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1 (Supp. II 2024). When reviewing a factual challenge to the Commission's

final award:

6

> A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence. Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence.

*Harper v. Springfield*, 687 S.W.3d 613, 618 (Mo. banc 2023) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003)); *City of Clinton v. Dahman*, 669 S.W.3d 142, 148 (Mo. App. W.D. 2023) (citing *Jackson Cnty. v. Earnest*, 540 S.W.3d 464, 469 (Mo. App. W.D. 2018)) (noting that reversals for lack of competent and substantial evidence will only be in "rare cases"). "[The appellate court] defers, however, to the Commission's findings as to weight and credibility of testimony and are bound by its factual determinations." *Steinbach v. Maxion Wheels, Sedalia, LLC*, 667 S.W.3d 188, 195 (Mo. App. W.D. 2023) (quoting *Mirfashi v. Honeywell Fed. Mfg. & Tech., LLC*, 620 S.W.3d 658, 666 (Mo. App. W.D. 2021)).

In contrast, the challenges to determinations of law made by the Commission are reviewed *de novo*. *Hayes v. Ginger C, LLC*, 582 S.W.3d 140, 147 (Mo. App. W.D. 2019). "To the extent that the Commission affirmed and adopted the findings and conclusions of the ALJ, the appellate court reviews the ALJ's findings and conclusions for error." *Steinbach*, 667 S.W.3d at 195 (citing *Hayes*, 582 S.W.3d at 146).

**Point I**

In Point I, Balliu argues that the Commission misapplied the law in determining that his 1999 injury did not combine with his 2015 injury to create a permanent total disability.

7

Balliu claims he is entitled to compensation from the SIF for his 2015 injury pursuant to section 287.220.3(2). To be eligible for compensation under section 287.220.3(2), Balliu must establish that he (1) suffered from a medically documented preexisting disability which falls into one of the four classes outlined in section 287.220.3(2)(a); and (2) sustained a "compensable work-related injury that, when *combined* with the preexisting disability . . . results in a permanent total disability," § 287.220.3(2)(b) (emphasis added). Here, the Commission agreed with Balliu that his 2015 injury resulted in his permanent total disability; however, it rejected Balliu's claim against the SIF because it found that Balliu's 2015 injury alone, *not in combination* with any preexisting disability, left him permanently and totally disabled.

Balliu argues that his 1999 hernia should be considered to have "combined" with his 2015 injury to create a permanent total disability because the 1999 hernia was a "but for" cause of the 2015 injury.[3] We disagree. As detailed below, the question of SIF liability does not turn alone on whether a prior injury is a "but for" *cause* of a later injury

---

[3] Balliu claims the evidence demonstrates that had his 1999 hernia and its subsequent surgical repair not occurred, he would have not developed the scar tissue that entraps his ilioinguinal nerve, which, after being aggravated by his 2015 workplace lift attempt, now causes the chronic, debilitating nerve pain that leaves him disabled. Though this evidence may leave little doubt that the 1999 hernia serves as a qualifying "preexisting disability" that "directly and significantly aggravate[d] or accelerate[d] the subsequent work-related injury" occurring in 2015, § 287.220.3(2)(a)(iii), this "acceleration" or "aggravation" is only the first step in a SIF liability claim—not to be conflated with the second step contained in section 287.220.3(2)(b) —that the "combination" of the qualifying preexisting disability *and* the primary injury "results in a permanent total disability." *See also Treasurer of State v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021).

but rather whether a qualifying preexisting disability *combines* with a later injury to render the injured worker unemployable.

As our Missouri Supreme Court has stated:

> The purpose of the SIF is to compensate an employee when his work-related injury combines with a preexisting disability and causes a greater disability than the work-injury alone would have caused. As laid out in section 287.220.1, the SIF "provides for *fund liability **if** the preexisting disability and the **combined effect of it and the new injury are each of such seriousness that they are a hindrance or obstacle to employment***." When the SIF statute is applicable, the employer is liable only for the amount of disability caused by the employee's current injury, and the SIF fund is liable for "the amount of the increase in disability caused by the synergistic effect of the two injuries." Therefore, the SIF provides a protection for employers in hiring an employee who has a pre-existing disability.

*Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 630-31 (Mo. banc 2012) (citations and footnotes omitted) (emphasis added) (quoting *Pierson v. Treasurer of State*, 126 S.W.3d 386, 388-89 (Mo. banc 2004)); *see also Dubuc v. Treasurer of State-Custodian of Second Injury Fund*, 597 S.W.3d 372, 377 (Mo. App. W.D. 2020).

Thus, if the primary injury *alone* amounts to a permanent total disability, the SIF is not liable because the primary injury *did not combine* with a preexisting disability to create a permanent total disability:

> Employer . . . did not show how the combination of the last injury and a prior permanent partial disability resulted in permanent total disability, as is required for the Fund to be liable under § 287.220.3(2)(b) . . . . Substantial evidence supports the ALJ's finding that the [prior injury] alone rendered Claimant permanently and totally disabled. The occurrence of a subsequent work-related injury does not change the fact that Claimant was already permanently and totally disabled at the time of the [last injury]. The subsequent injury may have added to Claimant's misery but did not make him more permanently and totally disabled or combine with his prior [injury] to *result* in permanent total disability.

9

*Watson v. Tuthill Corp.*, 672 S.W.3d 260, 268 (Mo. App. S.D. 2023).  For similar reasoning, the SIF does not bear any liability if the primary injury, here Balliu's 2015 injury, solely and independently created a permanent total disability:

> In deciding whether the [SIF] has any liability, the first determination is the degree of disability from the last injury considered alone.  Accordingly, *pre-existing disabilities are irrelevant* until the employer's liability for the last injury is determined.  *If the last injury in and of itself rendered [the employee] permanently and totally disabled, then the [SIF] has no liability* and [the employer] is responsible for the entire amount of compensation.

*Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 248 (Mo. banc 2003) (overruled on other grounds by *Hampton*, 121 S.W.3d at 223) (citations omitted); *Mihalevich Concrete Constr. v. Davidson*, 233 S.W.3d 747, 754 (Mo. App. W.D. 2007) (same); *City of Columbia v. Palmer*, 504 S.W.3d 739, 746 (Mo. App. W.D. 2016) (citing *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 50 (Mo. App. W.D. 2007)) ("Because the Commission found that Palmer's permanent and total disability was due solely to the [primary injury], it assessed no responsibility to the Second Injury Fund."); *Forshee v. Landmark Excavating & Equip.*, 165 S.W.3d 533, 537-38 (Mo. App. E.D. 2005) (holding that erroneously applying the incorrect legal standard for analyzing whether a medical condition legally qualified as a preexisting disability was harmless when the Commission also concluded that the primary injury, alone, caused a permanent total disability, rendering the preexisting disability and any corresponding legal analysis of it irrelevant).

Here, Balliu does not contest that the 2015 primary injury—ilioinguinal neuralgia—is the disabling injury.  Instead, he merely argues that the scar tissue from the

10

1999 repair of his work-related hernia contributed to *cause* the ultimate ilioinguinal neuralgia condition. But, this is not a case in which the *cause* of the primary injury is contested; instead, the question is whether the condition of the 2015 primary injury—ilioinguinal neuralgia—created physical restrictions of such magnitude that Balliu was no longer employable or whether the ilioinguinal neuralgia was not totally disabling until *combined* with the preexisting 1999 hernia injury. The overwhelming evidence presented to the Commission is that the 2015 primary injury *alone*, no matter what *caused* it, created Balliu's permanent and total disability, so the SIF has no corresponding liability.

Point I is denied.

## Point II

In his second point on appeal, Balliu argues the Commission's finding—that his 2015 primary injury solely and independently caused his permanent and total disability—is against the overwhelming weight of the evidence and, thus, the final award is erroneous.

When challenging the Commission's final award on the basis that it is against the overwhelming weight of the evidence, such challenge must follow three analytical steps:

> [S]et out all record evidence favorable to the award, . . . set out all unfavorable evidence, subject to the Commission's explicit or implicit credibility determinations, and . . . show in the record how the unfavorable evidence so overwhelms the favorable evidence and its reasonable inference[s] that the award is, in context, not supported by competent and substantial evidence.

*Steinbach*, 667 S.W.3d at 196 (citing *Comparato v. Lyn Flex W.*, 611 S.W.3d 913, 920 (Mo. App. E.D. 2020)).

11

Balliu's appellate briefing is devoid of such analytical framework.

Here, Balliu has merely recited all of the evidence in the record favorable to *himself* and has ignored all of the evidence favorable to the Commission's award. Thus, we would be justified to deny his evidentiary challenge for this reason alone. *Lynch v. Treasurer of State*, 635 S.W.3d 573, 581-82 (Mo. App. E.D. 2021) (citations omitted) ("Adherence to this analytical framework is mandatory because it reflects the underlying criteria necessary for a successful challenge. A challenge cannot succeed absent any of the criteria."). However, because we can sufficiently discern the evidence relevant to Balliu's challenge in Point II, we exercise our discretion to review it, *ex gratia*. *See Nichols v. Belleview R-III Sch. Dist.*, 528 S.W.3d 918, 928-29 (Mo. App. S.D. 2017) (reviewing, *ex gratia*, an argument that the "award of the Commission was not supported by sufficient competent evidence" despite appellant's failure to follow the mandatory procedure).

With respect to the relevant factual proposition underlying the Commission's judgment that Balliu purports to challenge—whether the 2015 injury alone rendered Balliu permanently and totally disabled—the whole record contains sufficient competent evidence to support the Commission's finding. Balliu is correct that the Commission may not "disregard the uncontradicted expert medical opinion before it and, instead, to create its own medical causation opinions without the aid or assistance from a qualified medical professional." *Angus v. Second Injury Fund*, 328 S.W.3d 294, 303 (Mo. App. W.D. 2010). That is not the case here.

No expert testified that the 2015 injury, considered in isolation, was insufficient to create a permanent total disability. In fact, considerable medical and vocational evidence not cited in Balliu's appellate brief supports the opposite conclusion.

Balliu's IME opined that the 2015 injury, "in isolation alone," was "the direct, proximate, and prevailing factor" causing his pain and necessity for physical restrictions including: no lifting more than fifteen pounds; no standing, sitting, or walking more than twenty minutes; the necessity for reclining several times each day to relive pain; and no squatting, twisting, or bending.

Vocational Expert concluded that these post-2015 physical restrictions, most notably the necessity to recline, prevented Balliu from working even unskilled sedentary jobs, rendering him permanently and totally disabled.

Even though the *factual* underpinning for the IME's and Vocational Expert's opinions was that the 2015 primary injury, *alone*, caused the physical restrictions creating Balliu's unemployability, each expert then contradicted their *factual* analysis by making a contradictory conclusion that, actually, the *combination* of the 1999 work injury and the 2015 work injury created Balliu's permanent and total disability.

Faced with this conflicting expert testimony, the Commission explicitly noted that it was making credibility determinations regarding the evidence. In so doing, the Commission credited the *factual* admissions of Balliu's experts but not their corresponding contradictory conclusions. Of course, "[t]he Commission, as the finder of fact, is free to believe or disbelieve any evidence." *Steinbach*, 667 S.W.3d at 195. And,

this Court must defer to the findings of the Commission regarding the weight and credibility of testimony. *Id.*

Far from creating its own medical causation opinion, the Commission quoted from both the IME's report and the Vocational Expert's testimony in which they *both* concluded that the 2015 primary injury, *alone*, created the physical restrictions that rendered Balliu unemployable. The Commission was well within its discretion to credit this testimony and ignore subsequent testimony by the same experts that contradicted their earlier testimony and reports.

Point II is denied.

## Conclusion

The final award of the Commission is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Gary D. Witt and Thomas N. Chapman, Judges, concur.